## BRIG JAMES WELLS v THE U. STATES.

1812.

February 8th.

*Absent....Marshall, chief justice.*

In cases of ad-
miralty juris-
diction, new
evidence will
be admitted in
this court; and
for that pur-
pose a commis-
sion may issue.
The evidence
of that neces-
sity which will
excuse a viola-
tion of the
embargo laws,
must be very
clear and pos-
itive.

THIS was an appeal from a sentence of the Cir-
cuit court which affirmed that of the District Court of
Connecticut, restoring the Cargo but condemning the
brig James Wells, an American registered vessel, for a
violation of the 3d section of the *embargo act* of Janua-
ry *9th, 1808, in making a voyage to St. Bartholomews,*
under a clearance for the port of *St. Mary's, in the state
of Georgia.* The excuse suggested by the claimant of
the vessel was *stress of weather.* He stated in his claim
and answer, that the vessel laden with 1272 barrels of
flour, sailed from New York on the 26th of February,
1808, cleared and bound for *St. Mary's,* with a bona fide
intention of going there, and without any intent of go-
ing to any foreign place. But that by *contrary winds
and stress of weather* and the *leaky condition of the vessel,*
he was compelled against his will (he being owner and
supercargo) and against the will of the captain and crew,
to go to, and enter the port of *Gustavia,* in the island of
*St. Bartholomews,* in the West Indies, where he was
obliged by the leaky and shattered condition of the ves-
sel, to unlade the cargo, which was greatly damaged,
and he could not afterwards obtain permission to carry
it away again, but was compelled to sell it there.

The evidence on the part of the Claimant tended to prove that after the vessel got to sea, and the weather was rough she leaked considerably in her upper works, so that in bad weather they had to keep two pumps going at the rate of three or four hundred strokes every half hour, that after being six days at sea, it was judged "best for the preservation of their lives as well as "for the safety of vessel and cargo, to bear away for "any of the West India Islands"....that when they arrived at St. Bartholomews, part of the flour was damaged, and they were obliged to unlade the vessel to have her surveyed and repaired. That the governor of the island had prohibited the exportation of provisions and would not permit them to take away their cargo.

New evidence which had been taken under a commission issued from this Court, was offered.

*Pinkney, Attorney General,* stated that he could not consent to admit it, but wished the objection might be saved.

He supposed that a distinction ought to be taken between cases of *admiralty,* and cases of *maritime* jurisdiction, and by the act of congress, new evidence is admissible in this Court in cases of *admiralty* only.

On the next day, however, he said that he was induced by the particular circumstances of this case to wave his objection; especially as the question would be made in another case at this term.

HARPER AND PITKIN, for the appellant, cited the cases of the *Betsy and Charlotte v. U. S. Ante Vol. 4, p. 443, and Yeaton v. U. S. Ante Vol. 5, p. 281.*

THE COURT said that the admission of the evidence in this case, being by consent, would not prejudice the question if it should afterwards arise in another case.

PITKIN AND HARPER *for the appellant.*

The plea of necessity by *stress of weather* has been heretofore admitted as an excuse for violating the positive law of the embargo; and the only question in this

*(margin:* BRIG J'S. WELLS *v.* U. STATES. *)*

BRIG        case is whether the necessity was so urgent as to justify
J's. WELLS   the bearing away for a port of safety.   We contend that
    *v.*      reasonable apprehensions of loss by persisting in the
U.STATES.  voyage to St. Mary's was a sufficient justification.

Fraud is not to be presumed.   The fact is incontesta-
ble that the vessel leaked very much, and the weather
was very bad.   Such an apprehension of loss as would
have justified a deviation under a policy of insurance is
a sufficient justification in the present case.   And in
such case it is sufficient to justify a deviation that the
captain has acted fairly and *bona fide,* and according to
the best of his judgment for the benefit of all parties con-
cerned, and has no other view but to conduct the ship
and cargo by the safest and shortest course to her port
of destination.   *Marshall on insurance,* 408, 409, 410,
411

By the original embargo act of December 22d, 1807,
the master is to give bond in double the value of the ves-
sel and cargo, to reland the goods in the United States,
*"danger of the seas excepted."*   That act being in *pari
materia,* the exception of the dangers of the seas ought
to be considered as extending to the present case.

WASHINGTON, J. There is no doubt as to the *law*—
the only question is whether this case be within the ex-
ception.

*Pitkin.*   It is strong evidence that the master thought
he was doing right, that he returned directly to the Uni-
ted States and subjected himself at once to the penalty
of his bond—and that in fact he obtained only 12 dollars
per barrel for his flour at St. Bartholomews.

DALLASS, *contra.*

It was the duty of the owner to have a vessel fit for
the voyage and the season of the year.   This vessel was
badly built, her condition upon the former voyage was
given in evidence and was known to the owner when she
sailed.   He *knew* she would leak, and probably he *in-
tended* she should leak.   He knew the leak was in her
*upper works* only, and that therefore the lives of those
on board were not in danger.   He did not have the pro-

per repairs made at home which he knew were wanting. Nothing was done to her at St. Bartholomews, except *caulking,* and she brought home her cargo in excellent order. When they found that she leaked she might have returned. The wind which was *contrary* to St. Mary's would have been fair to bring her back—other vessels arrived about the same time with fair winds.

BRIG
J's. WELLS
<i>v.</i>
U. STATES.

Nothing but imminent danger to the *lives* of those on board could justify their going to the West Indies contrary to law. The safety of the vessel and cargo was a matter of no consideration, as a justification. There is therefore no analogy to the case of deviation.

*Feb. 20, All the judges being present,*

WASHINGTON J. delivered the opinion of the Court as follows :

That the law under which this prosecution is founded, has been, *prima facie,* violated, is admitted ; and it becomes absolutely necessary for the defendant, if he would excuse the breach, to bring himself within the exception made for his benefit, not by doubtful testimony, but by such as shall leave no reasonable doubt of the sincerity of his exertions to proceed to some port in the United States, and the danger or apparent impossibility of doing so.

That the vessel, shortly after leaving New York, leaked considerably is proved ; but it is also proved that the leak was in her upper works ; that she could be freed, and, by great exertions, was kept free of water.

It is clearly proved that, after a sail of six days, she bore away for the West-Indies, and the danger of continuing on the coast is indirectly stated, though no where positively affirmed.

But it is not proved by a single witness that an exertion was made to gain a port of the United States, or that the attempt, if it had been made, would, in the opinion of one person on board, have failed or been attended with danger. Nor are the state of the winds, or the lat-

BRIG
J'S. WELLS
*v.*
U. STATES.

itude and longitude of the vessel when she bore away, given in evidence so as to enable the Court to judge. In short, had the original destination been to the West-Indies, and this known to the crew, it would be difficult to fix perjury upon any one of those who have given evidence in this cause.

In such a case, where no presumption can, or ought to be made in favor of the owner of the vessel, and with so strong a temptation as he had to violate the law—her condemnation is inevitable.

*Sentence affirmed, with costs.*