11 U.S. 22
 7 Cranch 22
 3 L.Ed. 256
 BRIG JAMES WELLS
v.
THE U. STATES.
 February 8, 1812
 
 Absent. Marshall, chief justice.
 THIS was an appeal from a sentence of the Circuit court which affirmed that of the District Court of Connecticut, restoring the Cargo but condemning the brig James Wells, an American registered vessel, for a violation of the 3d section of the embargo act of January 9th, 1808, in making a voyage to St. Bartholomews, under a clearance for the port of St. Mary's, in the state of Georgia. The excuse suggested by the claimant of the vessel was stress of weather. He stated in his claim and answer, that the vessel laden with 1272 barrels of flour, sailed from New York on the 26th of February, 1808, cleared and bound for St. Mary's, with a bona fide intention of going there, and without any intent of going to any foreign place. But that by contrary winds and stress of weather and the leaky condition of the vessel, he was compelled against his will (he being owner and supercargo) and against the will of the captain and crew, to go to, and enter the port of Gustavia, in the island of St. Bartholomews, in the West Indies, where he was obliged by the leaky and shattered condition of the vessel, to unlade the cargo, which was greatly damaged, and he could not afterwards obtain permission to carry it away again, but was compelled to sell it there.
 The evidence on the part of the Claimant tended to prove that after the vessel got to sea, and the weather was rough she leaked considerably in her upper works, so that in bad weather they had to keep two pumps going at the rate of three or four hundred strokes every half hour, that after being six days at sea, it was judged 'best for the preservation of their lives as well as 'for the safety of vessel and cargo, to bear away for 'any of the West India Islands' . . . that when they arrived at St. Bartholomews, part of the flour was damaged, and they were obliged to unlade the vessel to have her surveyed and repaired. That the governor of the island had prohibited the exportation of provisions and would not permit them to take away their cargo.
 New evidence which had been taken under a commission issued from this Court, was offered.
 Pinkney, Attorney General, stated that he could not consent to admit it, but wished the objection might be saved.
 He supposed that a distinction ought to be taken between cases of admiralty, and cases of maritime jurisdiction, and by the act of congress, new evidence is admissible in this Court in cases of admiralty only.
 On the next day, however, he said that he was induced by the particular circumstances of this case to wave his objection; especially as the question would be made in another case at this term.
 HARPER AND PITKIN, for the appellant, cited the cases of the Betsy and Charlotte v. U. S. Ante Vol. 4, p. 443, and Yeaton v. Y. S. Ante Vol. 5, p. 281.
 THE COURT said that the admission of the evidence in this case, being by consent, would not prejudice the question if it should afterwards arise in another case.
 PITKIN AND HARPER for the appellant.
 The plea of necessity by stress of weather has been heretofore admitted as an excuse for violating the positive law of the embargo; and the only question in this case is whether the necessity was so urgent as to justify the bearing away for a port of safety. We contend that reasonable apprehensions of loss by persisting in the voyage to St. Mary's was a sufficient justification.
 Fraud is not to be presumed. The fact is incontestable that the vessel leaked very much, and the weather was very bad. Such an apprehension of loss as would have justified a deviation under a policy of insurance is a sufficient justification in the present case. And in such case it is sufficient to justify a deviation that the captain has acted fairly and bona fide, and according to the best of his judgment for the benefit of all parties concerned, and has no other view but to conduct the ship and cargo by the safest and shortest course to her port of destination. Marshall on insurance, 408, 409, 410, 411
 By the original embargo act of December 22d, 1807, the master is to give bond in double the value of the vessel and cargo, to reland the goods in the United States, 'danger of the seas excepted.' That act being in pari materia, the exception of the dangers of the seas ought to be considered as extending to the present case.
 WASHINGTON, J. There is no doubt as to the law—the only question is whether this case be within the exception.
 
 
 1
 Pitkin. It is strong evidence that the master thought he was doing right, that he returned directly to the United States and subjected himself at once to the penalty of his bond—and that in fact he obtained only 12 dollars per barrel for his flour at St. Bartholomews.
 
 
 2
 DALLASS, contra.
 
 
 3
 It was the duty of the owner to have a vessel fit for the voyage and the season of the year. This vessel was badly built, her condition upon the former voyage was given in evidence and was known to the owner when she sailed. He knew she would leak, and probably he intended she should leak. He knew the leak was in her upper works only, and that therefore the lives of those on board were not in danger. He did not have the proper repairs made at home which he knew were wanting. Nothing was done to her at St. Bartholomews, except caulking, and she brought home her cargo in excellent order. When they found that she leaked she might have returned. The wind which was contrary to St. Mary's would have been fair to bring her back—other vessels arrived about the same time with fair winds.
 
 
 4
 Nothing but imminent danger to the lives of those on board could justify their going to the West Indies contrary to law. The safety of the vessel and cargo was a matter of no consideration, as a justification. There is therefore no analogy to the case of deviation.
 
 Feb. 20, All the judges being present,
 
 5
 WASHINGTON J. delivered the opinion of the Court as follows:
 
 
 6
 That the law under which this prosecution is founded, has been, prima facie, violated, is admitted; and it becomes absolutely necessary for the defendant, if he would excuse the breach, to bring himself within the exception made for his benefit, not by doubtful testimony, but by such as shall leave no reasonable doubt of the sincerity of his exertions to proceed to some port in the United States, and the danger or apparent impossibility of doing so.
 
 
 7
 That the vessel, shortly after leaving New York, leaked considerably is proved; but it is also proyed that the leak was in her upper works; that she could be freed, and, by great exertions, was kept free of water.
 
 
 8
 It is clearly proved that, after a sail of six days, she bore away for the West-Indies, and the danger of continuing on the coast is indirectly stated, though no where positively affirmed.
 
 
 9
 But it is not proved by a single witness that an exertion was made to gain a port of the United States, or that the attempt, if it had been made, would, in the opinion of one person on board, have failed or been attended with danger. Nor are the state of the winds, or the latitude and longitude of the vessel when she bore away, given in evidence so as to enable the Court to judge. In short, had the original destination been to the West-Indies, and this known to the crew, it would be difficult to fix perjury upon any one of those who have given evidence in this cause.
 
 
 10
 In such a case, where no presumption can, or ought to be made in favor of the owner of the vessel, and with so strong a temptation as he had to violate the law—her condemnation is inevitable.
 
 
 11
 Sentence affirmed, with costs.