AND

# THE CORRECTION OF ERRORS

OF THE

## STATE OF NEW YORK,

IN JANUARY, 1826.

---

## JAMES REID, appellant,
### *against*
## JOHN G. VENDERHEYDEN, respondent.

J. G. V. a brother of the half blood, to S. V. who died without issue, leaving his wife *enseint*, filed a *caveat* against the proof of the will of the deceased. Whereupon the surrogate caused the parties interested, to be cited; proceeded to take proofs, and four days after the birth of the child, made a decree ·establishing ·the will. J. G. V. appealed to the chancellor, before whom a motion was made to quash the appeal, on the ground that his interest having ceased, he was no longer a proper party in the cause. This motion was overruled; and the chancellor afterwards awarded an issue to try the sanity of the testator, more than 15 days having elapsed from the time of making the first order. On appeal to the court of errors from the last order,

*Held*, that the first order being connected with it, was examinable by that court, notwithstanding the lapse of time.

*Held*, also, that the chancellor should have quashed the appeal.

A person having no interest in the subject matter of a suit, cannot be a party in any court.

If he have an interest at the commencement of a suit, and that interest ceases, the right to prosecute the suit, or to appeal, also ceases.

The declaration or order of a surrogate, on making a decree establishing a will, that each party shall pay his own costs, is not the subject of an appeal; 1. Because this is not a decree in form; 2. Because a surrogate having no power in such case to award costs, a decree in form for costs, is *coram non judice*, and void, without reversal by appeal.

ALBANY,    *It seems,* that a mere stranger may file a *caveat* against the proof of a will
Jan. 1826.    but this act is merely advisory ; and he has no power to litigate concern-
                ing the will.
Reid    A mere interest in the costs, gives no right of appeal in respect to any other
v.    matter.
Vanderheyden

ON appeal from a decretal order of the Court of Chance-
ry, sitting as a Court of Probate, in a testamentary cause on
appeal from a decree of the Surrogate of the County of
Rensselaer.

The order appealed from, awarded an issue upon the
will of Samuel Vanderheyden.

The facts, so far as they related to the points of discussion
in the Court of Chancery, on the merits, are stated in 1
Hop. Ch. Rep. 408-9, S. C. But the cause going off in this
Court upon an objection for want of parties, not notified in
that report, a supplemental statement of facts becomes ne-
cessary

Samuel Vanderheyden, of the County of Rensselaer, died
on the 27th November. 1823, leaving a large real and per-
sonal estate, and having first executed a paper writing, dated
November 14th, 1823, purporting to be his last will and tes-
tament, and which was the paper in question in the cause.

On the 10th of December, 1823, James Reid, by his coun-
sel, appeared before the Surrogate, presented this paper.
and prayed that it should be allowed, and proved by the
Surrogate, as the last will and testament of the deceased.
A *caveat* had previously been entered by the respondent
against proving the will.

Citations were therefore issued by the Surrogate, direct-
ed to the respondent, who was a brother of the deceased,
and to others the next of kin, to show cause against the
allowance of the will.

On the return of the citations, the parties appeared and
the cause was contested. The objection to the paper in
question, was, that at the time of its alleged execution, the
deceased was not of sound and disposing mind and memory
On this question of fact, many witnesses were examined ;
and on the 20th of April, 1824, the Surrogate made a de-
cree that the paper writing was duly proved as such will,

and as valid and effectual in law.  From that decree, an appeal was prosecuted by the respondent to the Chancellor, who, in March term, 1825, awarded an issue upon the will; whence the present appeal was prosecuted to this court.

ALBANY
Jan. 1826.

Reid
v.
Vanderheyden

The Surrogate's return to the Chancellor contained a concise history of the proceedings, with which was transmitted a copy of the will, and the testimony of witnesses, which had been reduced to writing, in the form of depositions.

The above facts appear from the report of Mr. Hopkins.

The Surrogate decreed, substantially, that each party should pay his own costs.  It appeared before the Chancellor, that the deceased died leaving his wife, Eliza Ann Vanderheyden, *enseint* of a male child, who was born on the 16th day of April, 1824, and who was living at the time of the appeal to him, being the only child of the deceased.  That the deceased left one brother and two sisters of the whole blood, the respondent being a brother of the half blood, by a different mother; but he left no father or mother living. The will in question disposed of all the property of the deceased to persons other than the respondent, viz. to the wife and child; and in the event of the marriage of the former and death of the latter, then to the two sisters.  The will also appointed the respondent, the appellant, and J. R., guardians of the child and executors of the will; directing however, that the mother should have the sole control of the child till 10 years of age, unless she should marry before that time.

These facts appeared in the Court of Chancery on petition to quash the appeal, presented by the appellant, accompanied with affidavits duly verifying them.  But the prayer of the petition was denied by the Chancellor, on the 28th day of July, 1824.

The present being, in terms, an appeal from the decretal order awarding an issue which was made afterwards, on the 29th day of April, 1825 ; when no objection for want of parties was taken ;

SANFORD, Chancellor, assigned the reasons in support of this decretal order, as in 1 Hopkins' Ch. Rep. 409 to 415

*J. Radcliff*, for the appellant, now insisted that the appea from the Surrogate's decree should have been dismissed by the Chancellor, on the ground that the respondent, after the birth of the posthumous son, had no right by law to appeal. The respondent was not aggrieved. True, before the birth of the child, being then one of the next of kin, he had an interest, as distributee, to set aside the will. He was also one of the heirs; but all interest ceased with the birth of the child. There was not even a contingent interest left in him. The property vested in the child; and the respondent could not claim even on the death of the child.

It is no answer that the respondent had an interest when he instituted his proceedings before the Surrogate. There are many instances in which a change of interest will be regarded in the prosecution of a suit both at law and in equity. (2 Tidd, 1096. 2 Str. 880, 1015. Cooper's Eq. Pl. 63. 4 Ves. 387. 18 id. 426.) This very point was decided in *Downing* v. *Porter*, (9 Mass. Rep. 386.) That case decides that a contingent interest is not sufficient to entitle a party to appeal; but it must be by the person holding the immediate interest.

It may be said the respondent was interested in the decree, at least so far as the question of costs was concerned. The Surrogate's decree was undoubtedly right in this respect. He had no power to award costs to either party as against the other; and could only leave them as he has done, each to pay his own costs. As against the failing party costs depend on the statute; (2 Inst. 288;) which is silent as to costs in this case. (1 R. L. 446-7, s. 9.) The legal consequence is, that each must pay his own costs. The respondent is the last person who should complain of the costs; for he having failed before the Surrogate, any modification of the decree in this respect must be against him.

But an appeal will not lie from a decree for costs only. (1 Ves. Sen. 250. 10 Ves. 572. *Travis* v. *Waters*, 12 John. Rep. 500.)

That an appeal from the last decree brings up the former orders in the cause, he cited 1 John. Cas. 436; 12 John. Rep. 500: 2 Cowen, 195.

As this was a preliminary point, *The Court* directed the counsel on both sides to be heard upon it before going into the merits : inasmuch as if they should be with the appellant upon this, it would dispose of the cause, without discussion on the points involved in the merits.

*D. Buel* and *J. P. Cushman,* for the respondent. There is no pretence for going back to the order of July, 1824. We supposed, that when the appellants passed by the 15 days to which the statute (1 R. L. 134, s. 9,) limits an appeal, it was a tacit admission that he was unwilling to stand or fall by it. This order relates to a mere question of technical form. It is not material to the event of this suit, who is the party. Here he is the oldest uncle of the half blood, who, by the common law, next to the mother, would be guardian in socage to the infant, if the land should descend.

But the appeal from this interlocutory order should have been prosecuted within 15 days. (1 R. L. 134.)

Again, it was an order relating to the mere practice of the court. Such an order is not the subject of an appeal. (9 John. 443, 444, 489, per Spencer, J. It related to the form of the proceeding only. The respondent is named as a party in the decree of the Surrogate, made after the fact had transpired, which, it is now contended, disqualified him from being a party to the *caveat.* The appellant had passed the time for objecting to a matter of form. The objection should have been made before the Surrogate. Not being made there, it could not be heard by the Chancellor, on appeal ; nor will it be noticed by this court.

It is difficult to define who is a proper party in a Surrogate's Court.

It is perhaps true as a general rule, that an appeal from a final decree shall open the previous orders in a cause. But this case does not come within the rule. The decree appealed from is plainly not a final decree. All the books agree in calling an order for an issue, interlocutory. *Le Guen* v. *Gouverneur & Kemble,* (1 John. Cas. 436,) confines the rule, that you may go back on an appeal from an interlocutory decree, to the previous orders to cases where the

merits are fully before this court, so as to warrant a final decree here. *Jaques* v. *M. E. Church*, (17 John. 548,) requires that the previous order should be connected with the merits of the cause.

But the party should never be allowed to question on the argument, an order which he has not mentioned or even alluded to in his petition of appeal. It is a rule of practice that he must, in the appeal, specify particularly what he appeals from; and file his appeal with the register of the court. (Blake's Ch. Pr. 2 ed. 172, 465, 7 & 8 Gen. Rule of this Court. Nothing can be put in the petition of appeal except what is put in the appeal itself; and the court will pass on those parts of the decree only which are mentioned in the petition. (*Sands* v. *Codwise*, 4 John. Rep. 536.)

On the face of this case, it came here by an appeal from the decree of March term, 1825. The constitution requires that the Chancellor shall assign his reasons. This is not done as to the previous order. That order is not alluded to in the opinion. Mentioning it in the petition was evidently the result of an after thought. There being no regular appeal from that order, the Chancellor was not required to assign his reasons for it.

The right to object now is waived on another ground. The appellant passed over the previous order, and proceeded to an argument on the merits. Even as to the court below, and especially as to this court, he had waived the objection. (*Atkinson* v. *Manks*, 1 Cowen, 691, 709, per Sutherland J.) In the very case cited on the other side, of *Travis* v. *Waters*, (12 John. Rep. 511,) the same doctrine is laid down. That case decides that a delay to apply on the subject of costs, was a waiver of all objection. The doctrine proceeded on the ground of laches ; not that there was no right to appeal from a decree concerning costs.

But supposing the objection to be in season, the decision of the Chancellor denying the prayer of the respondent to quash the appeal for want of parties, was correct in principle. There can be no doubt that the respondent was competent to file a *caveat*. The books which relate to the ecclesiastical courts, are on most subjects meagre and unsatis-

factory ; but they are full and clear as to the party who may enter a *caveat*. So far from being confined to the person in interest, it may be entered by a mere stranger. (Toller, 72–3, ch. 2, s. 9. Bac. Ab: Executors and Administrators, (E) pl. 8, p. 41. *Hutchins* v. *Glover*, Cro. Jac. 463–4. *Manning* v. *Napp*, 1 Salk. 37.) In some of these authorities, the effect of a *caveat* is considered, as to a court of common law ; and it is doubted whether it shall have any effect. But we are here proceeding according to the canon law. In 1 Burns. Ecclesiastical Law, a *caveat* is defined thus : " a caution entered in the spiritual court, to stop probates, administrations, licences, dispensations, faculties, institutions, and such like, from being granted without the knowledge of the party that enters it." Has a *caveat* in our law any different effect as to the court of the Surrogate ? It is plainly admissible ; being expressly recognized by our statute, (1 R. L. 446-7, s. 9.) On entering it, the Judge of Probate, or Surrogate, is to cause the parties to appear before him ; and hear and determine the matter in controversy. The right to enter it is not confined by the statute to the party in interest. It is granted in general terms. The legislature doubtless had some idea of what the law was in England. If they had no objection to this right being exercised by a stranger, why not say so.

But at what stage did the proceeding become irregular ? The original decree was entered on the 20th of April, 1824. The child was born on the 16th ; 4 days previous to the decree. If there was any irregularity, it happened before the Surrogate ; and how is that to be got rid of, but by an appeal to the Court of Chancery for that very cause ? It should then, appear upon the return that the objection was taken. It could not be made on petition or motion ; being upon a matter which arose before the decree by the Surrogate.

There is good reason why a stranger should be allowed to enter a *caveat*. Its propriety is eminently illustrated in this case. A will is obtained by the greatest fraud, and the most odious conspiracy. The only one in immediate interest is a child. The rule is highly reasonable that any res-

ponsible person may interpose. The court can settle the question of costs. Admit that the party here cannot, by any possibility, have a claim to the subject of controversy; he is near of kin; and for the very reason that he cannot inherit the real estate, he may be guardian in socage, (1 Bl. Com. 488;) and is esteemed in law and equity the most proper person to take charge of the infant's person and rights. The same principle is adopted in appointing committees of lunatics. The court have a right to be satisfied that he is actuated with a single view to the interest of the child.

*Downing* v. *Porter*, (9 Mass. Rep. 386,) cited on the other side, is a case which can make nothing for or against us. The proceeding was probably based on some statute of Massachusetts. It was not the case of a *caveat*. Administration had been granted. The question of parties is peculiarly proper to be left as a matter of discretion to the court where the proceeding happens to be pending. In this case if the child dies, living the mother, she will be the next of kin and take the personal property from him. (1 P. Wms. 48-49.) It then goes to her connexions, on her dying; and not to the respondent. In the eye of the law, then, the respondent is the proper person to be guardian to the infant; as having no expectation, or a very remote one at least, from his death.

It is not denied that the *caveat* was valid. Does it not follow that the right to appeal exists? Costs are given by the decree against us. May we not appeal from the decree, on the ground that the costs should have been awarded, wholly against the opposite party? That an unjust burthen was left upon us by the Surrogate? By the statutes, (1 R. L. 454, s. 32, and Laws, sess. 46, ch. 70, s. 3, p. 63,) and person *claiming to be aggrieved* may appeal. The respondent *claims to be aggrieved;* and he shows himself to be aggrieved in the article of costs. This is said to be such a distribution of costs, as would be made by operation of law. Be it so, for the purposes of the argument. This can make no difference as to the right of appealing. We are now on the preliminary question. The doubt started, is whether we have such an interest as warrants our being a party. We

do not concede that the decree has no operation beyond the law. We have a right to say that we are aggrieved, and to appeal. It is admitted that there is no statute authorizing the Surrogate to decree costs in this case; and that none can be given by the common law.

If there was originally a right of appeal, there has been nothing to change it. In the eye of the law, the interest of the respondent is the same now as when he entered a *caveat*. The rights of the child are the same. The rights of an infant, *en ventre sa mere*, are the same as if born. (1 R. L. 54, s. 5. 1 Bl. Com. 129, and Christian's note.) These rights might, then, have been the subject of an appeal in chancery.

The cases are against the reversal of the decrees upon the mere want of proper parties. Neither bills nor appeals are dismissed on that ground. (*Thomas Lord Wharton* v. *Robert Squire*, Colles, 270.) Proper parties may be added; and interest in a party is not always required, even in a court of law. (*Raymond* v. *Johnson*, 11 John. 488.) The whole is mere arbitrary matter of practice, belonging exclusively to the court below. Even in a court of law, bankruptcy, during the pendency of a suit, is no abatement. (id.) In a Court of Chancery, it merely stays the proceedings till the assignees are brought in. There is no strict rule on this subject, as to *caveats*. The law, we have seen, is less rigid on this head than any other.

As to the objection, that costs alone are not the subject of an appeal, the rule is unsettled. Platt and Spencer, Js. differed on the point, in *Travis* v. *Waters*, (12 John. 500.) An appeal is denied in England, because Chancery has a perfect discretion on the subject. But it would be error in a court of law to give costs where none are allowed; and it is so in the ecclesiastical court. The cases of appeal from Chancery do not apply to a testamentary case.

The interest, even of an immediate distributee, is always somewhat contingent. It depends on the question whether there will be a surplus beyond the payment of debts. We never had any absolute interest. Yet it is granted that we were right in the beginning. The Court of Probates being

*Margin note:* ALBANY, Jan. 1826.

Reid
v.
Vanderheyden.

formed on the model of the English prerogative court, we must take the law as it stands in relation to that court ; and if a stranger may enter a *caveat* and proceed in an appeal there, he may do so here.

Even in the case of a writ of error, the suit does not abate by the death of the defendant ; and after an assignment of errors, it does not abate by the death of the plaintiff ; but it goes on for the benefit of the persons interested. All this, and the like doctrine, is technical. The death of the Chief Justice before the return is signed, formerly rendered the writ of error ineffectual ; and the prorogation of Parliament discontinued its proceedings. If a suit may be carried on in the name of a party who becomes bankrupt, for the benefit of his assignees ; on the same principle it may go on in this case for the benefit of the child. No rights of the child can be lost ; and they may be benefited. The object is the furtherance of justice. There can be no ultimate proceeding by execution ; but the court are to pass upon the mere question, is this the will of the deceased ?

*A. Van Vechten,* in reply. The decision of this cause cannot bind the respondent ; for he has no interest which it can affect. It cannot bind the infant who is not a party. If it cannot bind the respondent, of course it will not affect the infant ; for it should be mutually binding.

The previous order is as much in question as if there had been a direct appeal from it ; and it is a sufficient objection that the respondent had no interest. He does not appear as guardian to the child, and is to be deemed a mere intruder. The right to enter a *caveat* is not followed by the power to become a party, and litigate the will. It is conceded to be a mere caution which a stranger may give. Being merely cautionary, it is not an act of litigation. It is like the act of a counsellor rising in court and advising *ut amicus curiæ.* When the *caveat* is entered by the stranger, all is done which he has power to do. We could not apply to quash the *caveat,* which was a mere notice. There was nothing to aggrieve the respondent, because he had no rights. True the statute gives the right of appeal to the party claiming to be aggrieved ; but there must be some foundation for the

claim. How can he be said to be aggrieved when he has no interest to be affected? This has been treated as a Chancery proceeding; but in that Court the cause is never suffered to proceed on a change of interest appearing, without the proper parties being brought in. If a stranger of wealth may come in and litigate the will, a man of straw may do the same; and there will be no end to the number of parties. Nor can the Court ever require security for the costs of a resident citizen. A man of property might sacrifice the whole estate by a *caveat* and appeal, and that too with impunity; for it is not pretended that costs can be given against him. They are unauthorized by the statute.

The decree for costs is no more than saying each party shall pay his own costs; and it does not seem to be denied that this is precisely what the law would imply. No sum is specified, and there was no taxation. The decree for costs could have no effect. It could not be enforced by execution. The persons who performed the services for which costs were due, must, notwithstanding, bring their action to collect them; and declare on a *quantum meruit*, and show in proof what the law entitled them to. Ample relief might have been obtained short of this court of dernier resort. It is a trifling subject and not worthy the strength of Hercules.

But if these costs are the subject of an appeal, it does not follow that there is a right of appeal as to the merits. These are not affected by the question of costs.

The objection that the order of July, 1824, is not appealed from, is strict and technical. The merits are all before the Court; and we are in effect discussing the power of a Judge of Probate; not a proceeding in the Court of Chancery under its general powers. An issue has been awarded and the very question is, whether the respondent can come to the Chancellor, and go down on an issue to try rights which he confessedly does not possess. The decision of the jury will be of no effect. It can operate on the rights of no one : and all this round of litigation is idle ; a mere course of speculation upon an abstract right.

The question of proper parties is always important ; and the want of them, cause for appeal. It is essential that they

should have an immediate interest. (*Hickock* v *Scribner*, 3 John. Cas. 315. *Grant* v. *Duane*, 9 John. Rep. 611-12, per Thompson, J.)

The respondent is neither interested, nor does he appear *pro forma*, for the benefit of any party in interest. If he comes in the character of guardian or in any way representing the rights of others, this should be stated on the record.

The objection as to parties might have been made at the hearing; but this was not necessary to save our rights of appeal. It is surely sufficient that we raise it *in limine;* (9 John. Rep. 612;) and it would have been indecorous to mention it again before the Chancellor, after we had been overruled. A court of appeal may examine all the errors of the court below, as well as those of omission, as of commission. (*Bush* v. *Livingston*, 2 Caines' Cas. Err. 66.)

All the parties in interest acquiesce. Not a word of complaint is heard from any one having a right to complain.

In *Buel* v. *Street*, (9 John. 443,) the appeal was dismissed because it related to a mere question of practice in the court below; not at all connected with the merits of the case. The order in question related directly to the merits; and being connected with the last decretal order, it is opened by the appeal. (*Jaques* v *M. E. Church*, 17 John. 548.) The case cited was an appeal from a final decree. The decree appealed from in this case is either final as affecting the merits; or it should have been so. If not, that, in itself, is a cause of appeal. The cause should have been dismissed by the Chancellor. That would have been final. *Sands* v- *Codwise*, (4 John. 536,) cited against us, was the case of several distinct, disconnected and independant decrees. Where they are so, it is true, each should be made the ground of a distinct and specific appeal. But when the error of the first runs on into the order appealed from; if the latter is erroneous because the first was so, all the orders present the same point. They differ merely in the order of time; and the error exists as much in the last as in the first. The want of parties in this case is the single point. It is a whole, and cannot be divided. Being so, the appeal from the last em-

braces both orders. In *Atkinson* v. *Manks*, (1 Cowen, 709,) the decree was entered by the consent of both parties ; and for that reason alone was the appeal held to come short of it.

The authorities cited to show the effect of a *caveat*, merely show how it is regarded in the eye of the ecclesiastical law. *Manning* v. *Napp*, (cited by the counsel from 1 Salk. 37,) allows that the *caveat* was *damnum abseque injuria ;* "for the property of the goods till administration, was in the ordinary ; and the plaintiff had neither *jus in re nec jus ad rem :*" thus sanctioning the principle that a *caveat* is unknown to the common law. Are we governed by the ecclesiastical law ? The Surrogate derives his authority from the statute. His powers are defined and limited by it. The will is to be proved before him. A *caveat* may be entered, when there is a dispute ; and he is then to cause the parties to appear before him, and hear and determine the matter in controversy. (1 R. L. 446-7, s. 9.) Who are these parties to be thus cited ? Certainly those interested merely. None others have a right to be heard. Suppose they all come and concur in the proof of the will ; can they be kept at bay by this *caveat* entered by a stranger ? Can he drive them to a course of litigation ? If they do not come, the legal conclusion is that they acquiesce ; that they are opposed to any controversy which the intruder wishes to involve them in. Would the Surrogate be bound in such a case to wait during the three months, the time which the cases allow to the operation of the *caveat ?* The duties of all concerned in managing the estate, are to be performed according to the course of the common law. "A *caveat* is of such validity by the *canon* law, that if an institution, administration, or the like be granted pending such *caveat*, the same is void. But not so by the common law. For by the common law, an admission, institution, probate, administration or the like, contrary to a *caveat* entered, shall stand good ; in the eye of which law, the *caveat* is said to be only a caution for the information of the court, &c. but that it doth not preserve the right untouched, so as to null all subsequent proceedings, because it doth not come, nor hath it ever been determined, that a bishop became a disturber, by giving in-

ALBANY,
Jan. 1826.

Reid
v.
Vanderheyden

stitution without regard to a *caveat ;* on the contrary, it was said by Coke and Doderidge in the case of *Hutchins &amp; Glover*, H. 14. Ja. that they have nothing to do with a *caveat* in the common law." (1 Burn's Eccl. Law, 207-8.)

If the statute had said a notice in writing instead of a *caveat*, it would have been the same thing.

The notion which the gentlemen advance as to the common law guardian in socage, is entirely correct. He is one to whom the inheritance cannot possibly descend. Where there are several of this class in equal degree, an appointment is to be made. But here the mother is guardian in socage ; and in default of her, the uncle on the mother's side. (1 Bl. Com. 488.) The respondent cannot be recognized as guardian till he is appointed to that office. He did not enter the *caveat* as guardian.

A contingent or expectant interest must rest on some present vested right to support it. Otherwise, where are we to stop ? We know not who may finally be interested. If it can be demanded that we should litigate with all who may possibly have an interest, we may be driven to enter the lists with every one of the family with which we are connected immediately or remotely.

The counsel were heard during the short intervals from legislative business, on the 9th, 10th, and 11th of January.

And now, after several members of the court had expressed their opinions, and adverted with more or less particu larity to the reasons upon which they should vote, the question was taken, (SUTHERLAND, J. being absent.)

WOODWORTH, J. I have not been able, in the short space of time allowed for considering the point presented, and the arguments and authorities on which it depends, to reduce my opinion to writing. Aided, however, by the very full and learned discussions of counsel, presenting the case in almost every possible point of view, I have come to a conclusion perfectly satisfactory to myself; which, with the considerations upon which it has proceeded, I will briefly state to the court.

The question presented for our determination is, whether the respondent, John G. Vanderheyden, was properly made a party to the appeal from the surrogate. If he was, the argument must then proceed on the merits ; if not, there is an end of this cause.

It is an elementary principle, recognized in all the books, that a person having no interest in the subject of dispute, cannot be a party litigant : and I am not aware of a single exception in any one of our courts, whether proceeding according to the course of the common, civil or canon law. To show the nature and universality of the rule, and illustrate and enforce it, we need only go to the doctrines of a court of equity ; where the greatest possible latitude as to parties is indulged. There, not only must the original parties have an interest ; but that interest is followed in all its changes. Although an action may proceed in some cases in the name of the original plaintiff, in trust for others, on whom the interest is cast by operation of law ; (11 John. 488 ; )yet, in equity, even in cases of change of bankruptcy or insolvency, a bill must be filed in nature of a bill or revivor. Thus, where B. filed his bill ; and, after answer, was discharged under the act for the relief of insolvent debtors ; and his effects were assigned to B. who assigned to C., it was held that a bill was necessary to bring in the new parties in interest. (*Harrison* v. *Ridley*, Com. Rep. 590, and vid. 2 Mad. Ch. 1 ed. 400. 2 Vern. 548, 632.) The case in Comyn examines the subject ; and shows the ground and necessity of adhering to interest as the criterion of parties. Indeed, the contrary rule would produce a very singular state of things. Any stranger would be enabled to crowd our courts with business, as his curiosity, his revenge, or the spirit of litigation or gain might prompt him ; and that too without settling any right, without the court being able to do a single act personally binding on any body beyond the mere question of costs.

It is not necessary to controvert the proposition so much dwelt upon at the bar that any one may enter a *caveat* against the proof of a will. Admitting this to be so, I do not see

ALBANY,
Jan. 1826.

Reid
v.
Vanderheyden.

A person having no interest cannot be a party in any court ;

though it seems that a stranger may enter a *caveat* against the proof of a will.

Reid
v.
Vanderheyden.

that the consequences sought to be deduced would at all fol-
low.   This *caveat* is a mere monitory act.   It requires the
Surrogate to advise the parties in interest, who will then
govern themselves accordingly.   They are the only persons
who can interfere beyond the *caveat*.   The power of the
stranger is limited to the act of entering it.   Admitting the
contrary doctrine, would result in a very strange absurdity.
Suppose all the parties interested, to come in and declare
themselves satisfied that the will is genuine ;  is it to be tol-
erated that a mere stranger may drive them to the delay,
vexation and expense of litigating those very rights to which
no one pretends any claim ;  and which never can be assert-
ed against them ?   The neglect to appear and contest the
will, on being duly served with a citation, works the same
consequence in construction of law.   It is equivalent to a
confession.   It appears to me that the mere stating of the
doctrine contended for by the respondent, in all its extent,
is enough to show its utter inadmissibility ; and the only
question must be whether the respondent had an interest
at the time of the appeal.

The right of a
party, a dis-
tributee in a
surrogate's
court, farther
to prosecute
or appeal
ceases on the
birth of a post-
humous child
who is entitled
to the estate.

I do not deem it necessary to inquire whether he had such
an interest as would warrant his being a party when he com-
menced his proceedings in the court of the Surrogate.   Ad-
mitting him to have been one of the distributees of the es-
tate at that time, (and I think he was to be so regarded) that
interest was defeasible ; and was in truth defeated by the
birth of a posthumous child on the 16th of April, four days
before the decree of the Surrogate was pronounced.   This
event changed the rights of the parties altogether.   It not
only divested the respondent's right as distributee ; but it ap-
pears to me it took away all possibility of interest, all ex-
pectancy, unless it be a very remote one indeed.   The will
being out of question, all the estate, real and personal, vested
in the child.   To the real estate, the respondent plainly never
could succeed, even on the death of the child, being an
uncle of the half blood.   But the real estate is not in ques-
tion.   The personal estate, if any, beyond the payment of
debts, would pass to the next of kin.   This is the mother;
and on her death, it would pass to her next of kin.   Her

death before that of the child, would still leave the respondent's right of succession doubtful in law. For the purposes of this question, then, he was, at the time of pronouncing the decree by the Surrogate, a mere stranger. When his interest ceased, his right farther to litigate ceased with it. All power of appeal was, therefore, gone.

Is the respondent a proper party *pro forma*, to vindicate the rights of others? No such thing appears upon the record, or in any other way. It is not pretended that he is guardian to the infant, either *ad litem*, or otherwise. He has neither the custody nor protection of the child; and there is no rule in the books giving him a right to claim the guardianship. The uncle of the mother's side would doubtless be preferred. Why allow the respondent to litigate under pretence of benefiting persons who have a real interest? Are we to presume them inattentive to their rights, and that the infant will be injured by their neglect? If this be so, I repeat, what right has a stranger to interfere? The infant must seek his remedy on coming of age.

I think it follows conclusively, that the appeal should have been quashed by the Court of Chancery, when the motion was made for that purpose.

It was strenuously urged, however, by the counsel for the respondent, that it is now too late for the appellant to question the order then made; because, being interlocutory, he suffered the limitation of 15 days to pass, before his appeal was entered. This raises the question whether the appeal taken from the order awarding an issue, involves and brings up the previous one. It seems to me that that order is necessarily drawn in question. The inquiry whether there be proper parties to the litigation, runs through the whole proceeding. Not a step to be taken without them. The award of an issue, or any other order, is nugatory. They are essential to the form and constitution of the suit. This being so, the general principle was laid down in *Le Guen* v. *Gouverneur & Kemble*, (1 John. Cas. 498,) and is now well established, that " by an appeal from any interlocutory or final decree, all the proceedings in the cause anterior to the decree are necessary to be presented to the court; and pro-

Reid
v.
Vanderheyden

The respondent is not a proper party *pro forma*.

An appeal from one interlocutory order, brings up a previous one in any way connected with it tho' the time for appealing from the first order may have expired.

Reid
v.
Vanderheyden.

per for its determination. It may frequently become indispensable to reverse, alter or modify the previous proceedings, in order to make them consistent with the decree to be pronounced."

The rule thus laid down is forcibly illustrated by the principal case. In deciding the question, whether there should have been an issue, we must look at the whole of it: and any ground which shows that there should not have been one may be urged. Whether the proof was satisfactory upon the depositions, is one question; and above all, whether there are any rights to be determined. The two orders appear to me to be so essentially connected, that justice cannot be done, otherwise than by considering them in one view. The doctrine on this subject was also advanced in general terms in *Jaques* v. *The M. E. Church*, (17 John. Rep. 548.) The importance of adhering to the rule may be illustrated in a variety of ways. Cases may be supposed where it is vitally essential to the administration of justice. Suppose a party should file his bill to be relieved against proceedings at law; and obtain an injunction, which is dissolved on the coming in of the answer. The case, however, eventually turns out to be a doubtful one at the hearing, as depending on a variety of facts; and an issue is awarded. From this there is an appeal, and the issue is confirmed. Would not this court look back, and see whether the injunction was properly dissolved; and if not reverse the order of dissolution; and direct it to be renewed by the Chancellor; in order to save the party against being stripped of the fruits of his litigation by the judgment and execution at law?

*The costs before the surrogate.*

*A mere interest in the costs gives one no right of appeal in respect to any other matter.*

The only remaining question, respects the costs before the Surrogate. It is said the respondent has such an interest in these as entitles him to an appeal. If this be admitted, it by no means follows that we can consider the merits of the case, farther than they are connected with the question of costs. On seeing that they were improperly awarded, the decree may be reversed *pro tanto*. This, however, gives no rights to the respondent upon the other branch of the subject.

But I confess, I can see no possible ground of objection to the decree, so far as it relates to the costs. Indeed, it cannot be called a decree affecting costs. It leaves the parties, precisely as they would have stood had there been no decree; to the question between them respectively and the Surrogate, as to what they shall pay him for his services. There is no formal decree for costs; nothing which can be enforced by execution. The Surrogate, being satisfied probably that he had no power to award costs did not intend to make any decree respecting them; and what he said in the decree was his mere *ipse dixit* as to his own claim. It had no more effect than if he had pronounced it on any other occasion. It is not possible to make it out a decree within the meaning of the law.

At any rate, if it be a decree in form, it cannot affect the party. The Surrogate had no authority to award costs. There being a want of jurisdiction, the decree was for so much, *coram non judice*, and void. It could never have been enforced.

On the whole, I am of opinion that the decree of the Court of Chancery, should be reversed; and that the proceedings be remitted, to the end that the appeal from the Surrogate be dismissed from the Court of Chancery.

SAVAGE, Ch. Justice. I concur in the opinion delivered by Mr Justice Woodworth. The cases cited by him show clearly that we may go back from an interlocutory order mentioned in the appeal to another and previous order connected with it; though the latter was made more than 15 days anterior to the appeal. I cannot entertain a doubt of our right to do so in this case.

The respondent appears to me to have no rights, either in the real or personal property, which warranted his being made a party to the appeal. They ceased with the birth of the child; and he does not pretend to be pursuing this litigation in any other right than his own. It is remarkable, that when the petition was presented, and the motion made before the Chancellor to quash the appeal, the respondent himself, under oath, disclaimed all interest whatever in the subject of the controversy.

---

**ALBANY,**
**Jan. 1826.**

Reid
v.
Vanderheyden.

No decree by the surrogate as to costs.

A surrogate has no right to award costs on a hearing before him, as to the validity of a will.

Such an award would be *coram non judice,* and void.

The question of costs is clearly a matter between the respondent and the Surrogate ; and is untouched by the decree. On the whole, who and what does this proceeding by appeal conclude ?  No one in any single particular.  Aftei the infant comes of age ; or when any other person duly representing him, comes before the proper tribunal the whole ground must be gone over again, even if we interfere now, and either reverse or affirm he decree on the merits.

I am in favor of a reversal for the want of parties.

COLDEN, Senator.  I confess I felt myself unprepared to decide this cause, when the court took a resolution to pass upon it.  I could readily concur in the general principle, that the party instituting a suit must have an interest.  And there is another general principle, that when the interest ceases, the right to prosecute ceases.  It is not necessary, then, to look back beyond the birth of the child ; for the question comes to this ; did the interest cease when the child was born, so absolutely as to take away all right to continue the suit.

I have listened with great attention to the reasoning in support of this order ; particulary to that part of the reasoning which was intended to show that the respondent had an interest in some shape, either in his own right, or as representing others, which warranted the order of the Chancellor refusing to quash the appeal.  And this is a question which I would willingly have looked farther into ; as it appeared to me to be the turning point in the cause.  But I confess the reasoning of Mr. Justice Woodworth seems to place the matter in a very clear light.  It has convinced me that the respondent had no right whatever to prosecute the appeal.  To adopt the language of the question which we put to a witness as the test of his competency, it seems to me the respondent can " neither gain or lose in the event of this suit," so far as the subject matter is concerned.  Nor will an interest merely contingent vary the case, (though I confess I cannot see that the respondent has any such.)  An interest strictly contingent will not even disqualify a witness A rule which should receive a party upon the footing of

such an interest would lead to very great litigation and vex-
ation. Here, two deaths certainly must intervene, as I un-
derstand to be admitted by the respondent's own counsel, be-
fore he can claim any vested interest. By the same rule we
might let in a relation in the 20th degree to litigate the
question : nor do I well see that we can stop any where.

As to the objection which goes upon the statute of limita-
tion, the rule is, that all interlocutory orders connected with
the decree appealed from, are brought up with it. I under-
stand this to mean that the orders are essentially connected,
so that you cannot dispose of the one appealed from ac-
cording to the justice of the case, without interfering with
the former orders, some or one of them. It is only neces-
sary to see in this case, that the appeal brings up the ques-
tion of proper parties, to warrant our looking into the pre-
vious order. Now I understand the question of parties to
be always connected with a decree touching the merits.
Suppose this cause had gone to a final hearing and decree, is
there a doubt that an appeal would then have brought up
this question ? 1 think not. If so, an appeal from an inter-
locutory decree relating to the merits, ought, *a fortiori*, to
have the same effect. Whether a court be one of original
jurisdiction or appeal, it is always proper that it should look
and see if the parties before it are such whose interests and
rights are to be concluded. This is always a question on
the final hearing of a cause. Suppose this were the first
moment of presenting the question in the whole course of
the cause, I do not think we should hesitate to interfere.

On the question of costs, I concur with Mr. Justice Wood-
worth.

VIELE, Senator. I am in favor of hearing the argument
upon the merits before giving any opinion. For that reason
I shall vote against the dismission of the appeal by the
Chancellor.

SPENCER, Senator. I concur with Mr. Justice Wood-
worth, and the Chief Justice. As to the right of going back
to, and looking into the previous order, there is a great sim-
ilarity between the principal case and that of Gouverneu

ALBANY,
Jan. 1826.

Reid
v.
Vanderheyden.

and Kemble, cited by Mr. Justice Woodworth. In that case a bill was filed to overhaul a judgment at law, obtained, as was alleged, against the respondent, notwithstanding he had a good defence, on the ground of fraud. It was objected that such a bill would not lie; that the defence should have been insisted on at law. But the Chancellor overruled the objection; and awarded a feigned issue to try the question of fraud. Both the order overruling the objection, and that awarding an issue, were interlocutory; yet an appeal from the latter (an order for an issue, as in this case) was held to reach the former.

I must say I think, with Mr. Colden, that if the objection for want of parties were now made for the first time, we ought to listen to it.

On the question whether there be any interest in fact in the respondent, I have nothing to add to what has been said already. But there was one thing on this head which drew my attention particularly, as I now learn it did that of the Chief Justice. It is, that the respondent (the appellant in the Court of Chancery) came into that court with a sworn disclaimer of all interest. I will read an extract from his affidavit, made and read in opposition to the motion to quash the appeal on the ground that he had no interest : "And this deponent further saith, that in objecting to the proof of said paper," (the will in question,) " and filing a *caveat*, and in appealing from the decree of the said Surrogate, this deponent hath not been actuated by the hope or expectation of benefiting himself by acquiring any part of the estate of the said Samuel; but on the contrary, this deponent hath often stated to his counsel, and to others, that he did not intend to participate in the estate of the said Samuel in any event; and hath declared it to be his intention to release all claim which he might make thereto."

Here is as strong a disclaimer as can be stated on any record. A decree should always be final. It cannot be so unless the party upon whom it is to operate have an interest in the subject of it. I want no authority to show that a party must always be thus interested.

GARDINER, Senator, stating that not having had time to examine the question, he was not satisfied how it should be decided ; and, therefore, declined giving any opinion.

WRIGHT, Senator. I understand the object of the issue was to ascertain the single fact, whether the deceased was or was not of sound mind and memory when he executed his will. I confess I am not at this moment prepared to deny that truth may be elicited in this form ; although the party to the issue may not be technically interested in the subject bequeathed. Further reflection might convince me that this is so ; but not being prepared at present to join in such a decision, I must vote against the dismission of the appeal by the Chancellor.

ELSWORTH and MALLORY, Senators, concurred with Mr. Wright, that the appeal should not be dismissed.

The rest of the court concurring with Mr. Justice Woodworth,

It was thereupon ORDERED, ADJUDGED and DECREED, that the order or decree of the court of Chancery, of the 29th day of April, 1825, directing a feigned issue to be made up and tried between the above named parties, be, &c. reversed and vacated : that the court of Chancery do dismiss and quash the appeal brought by the said John G. Vanderheyden, in the said court of Chancery, from the order or decree of the Surrogate of the county of Rensselaer, and all proceedings had thereon, without costs below to either party ; and that the record and proceedings be remitted to the court of Chancery, that the decree might be executed.

END OF JANUARY TERM.

---

Margin notes:

ALBANY, Jan. 1826.

Reid v. Vanderheyden.

For reversal, 29 ; for affirmance, 4.