[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 443 
Upon the merits, this case presents but the single question, whether the respondent was the wife of Henry C. Patchin at the time of his decease; and this depends upon the narrower question, whether said Patchin was the man, calling himself David Sparks, between whom and the respondent, the banns of matrimony were solemnized by the Rev. Wm. H. Norris, pastor of the Forsyth street M.E. church, at his dwelling house in the city of New York, in the evening of the 12th of November, 1855. The fact of such marriage of the respondent having taken place is undisputed; and after a careful examination of the testimony, I am of opinion that no serious doubt can be entertained, that the marriage was between the respondent and Henry C. Patchin. [The learned judge here proceeded to examine the evidence at large and proceeded:] *Page 444 
For these reasons I am of opinion that the evidence relied upon by the appellant is wholly insufficient to overcome the positive proof of the marriage of Patchin, or to account for the apparent non-existence of any other man than him to answer to the name of David Sparks, the bridegroom of the wedding established by that proof. The Supreme Court, therefore, very properly reversed the surrogate's decree.
A further question arises upon the order of the court directing an issue to be made and tried at the circuit, to determine the question of the marriage. It is insisted, on the part of the appellant, that the Supreme Court was not authorized to award such issue, the case not being within the statute directing an issue on the reversal of a surrogate's decree. (3 R.S., 5th ed., p. 151, § 73.)
Prior to the adoption of the Revised Statutes of 1830 it was held that the Court of Chancery had power to award feigned issues, in such cases, on the ground that the practice on appeals from the decrees of surrogates' courts was according to the course of the civil law, by which new allegations and new proofs were allowed to be introduced, in the discretion of the court, in any stage of the proceedings. (Vanderheyden v. Reid, 1 Hopk., 408; Van Wyck v. Alley, id., 552.) The same course was pursued under the Revised Statutes (1 Paige, 550; 8 id., 479), and the correctness of that practice has been, to some extent, recognized, since the reorganization of the courts, under the Constitution of 1846, and since the adoption of the Code of Procedure. (2 Bradf., 6; 9 Abb., 393.) But in the case ofCaujolle v. Ferrié (23 N.Y., 90), which was an appeal from the case in 9 Abb., 393, I am informed that this Court rejected the additional testimony taken after the appeal to the Supreme Court, holding that the decree of the surrogate could only be reviewed on the evidence produced before him. This position is stated only in the dissenting opinion in that case (p. 119), but the other members of the court are said to have concurred in that part of the opinion. That case was quite similar to the present, and must control it as to the point under consideration. If no further testimony could be received, it was improper *Page 445 
to award an issue which could not be tried without further testimony. Even if the power to award the issue existed, it was not proper to subject the parties to the delay and expense of such trial, in the present case, though probably this court would not attempt to control the discretion of the court below in the exercise of such power. (2 Comst., 269; 11 Wend., 234.)
The judgment of the Supreme Court, so far as it reverses the decree of the surrogate, should be affirmed; the award of an issue to try the question whether the respondent is the widow of Henry Clay Patchin, deceased, should be reversed; and it should be declared that she is such widow, and is entitled to letters of administration upon his estate.
BALCOM, J. No statute has been cited by the respondent's counsel that authorized the Supreme Court to direct that the question be tried by a jury at a circuit court, whether Mary Grace Patchin, or Melvin, was the lawful wife and is the widow of Henry C. Patchin, deceased, and I have not been able to find any that confers such authority. The only cases in which the Supreme Court is authorized by statute to direct that an issue be made up and tried by a jury at a circuit court, on appeals from the decisions of surrogates, are those by which wills have been admitted to probate or refused to be admitted to record or probate. (2 R.S., p. 609, § 98; 3 id., 5th ed., p. 906, § 21; Laws of 1848, p. 295.)
Prior to the Revised Statutes the Court of Chancery proceeded on appeals from the decrees of surrogates according to the course of the civil law, and might hear new testimony and call to its aid the verdict of a jury, upon disputed questions of fact. (VanDerheyden v. Reid, 1 Hopk. Ch. R., 408; Scribner v.Williams, 1 Paige, 550.) And without noticing the change in the proceedings in surrogates' courts and on appeals therefrom, effected by the Revised Statutes, the chancellor entertained a motion in Case v. Towle (8 Paige, 479), to permit the appellant, in an appeal from a surrogate's decision, to produce further proof, but denied the application for leave to do so. And it appears that the Supreme Court in Caujolle v. *Page 446 Ferrié (9 Abb., 393), held, on an appeal from the decree of the surrogate, by which Ferrie was adjudged to be the legitimate son of the decedent, and entitled to letters of administration, that the appellate court might receive newly discovered evidence in addition to the evidence which was before the surrogate. But when the case was decided by this court, that question was not passed upon. DENIO, J., however, remarked (23 N.Y., 119,) as follows: "I have not thought it proper to consider the evidence upon this point, contained in the additional testimony produced by the appellant to the Supreme Court, while this case was pending there upon appeal, being of opinion that it can only be reviewed upon the proofs which were before the surrogate."
The case of The New Orleans Gas Light and Banking Company v.Dudley (8 Paige, 452), is cited by the respondent's counsel to show that the Supreme Court properly directed that the question of fact in this case be tried at a circuit court. But the decision of the chancellor in that case is no authority for that made by the Supreme Court in this. That case was brought before the chancellor by an appeal from the decision of a vice-chancellor, and he dismissed the appeal, so far as it relates to Mrs. Dudley, but with liberty to her to apply to the vice-chancellor for an issue to try the question of usury set up in her answer. He acted in that case strictly as an appellate judge, and did not retain the case and direct an issue to be made up for trial at a circuit court as the Supreme Court did in this.
I am not aware that the question was ever raised before the chancellor, whether the provisions of the Revised Statutes respecting appeals from the decrees of surrogates, had so far changed the proceedings in such cases as to make his court strictly one of review on such appeals, and divest it of all authority to try such cases de novo. But so far as my knowledge extends, the chancellor was supposed to possess only a strictly appellate jurisdiction in such cases, subsequent to the Revised Statutes, except where a different authority was conferred upon him by the legislature. *Page 447 
The Supreme Court possesses only the same powers and jurisdiction on appeals from the decisions of surrogates that the Court of Chancery had; and the justices of the Supreme Court possess only the powers and jurisdiction that the chancellor, vice-chancellors and circuit judges had under the State Constitution of 1821 and the laws prior to the judiciary act of 1847. (Laws of 1847, vol. 1., p. 323, § 16; id., p. 324, § 17; 3 R.S., 5th ed., p. 277, § 1; id., p. 906, § 22, c.)
An appeal in a case like this was never heard by a vice-chancellor; nor is such a one now heard by a justice of the Supreme Court, at a special term of that court. Such appeals are now heard at general terms of the Supreme Court, where, according to my views, only an appellate jurisdiction is possessed, except in certain cases specially provided for by statute. (Laws of 1848, chap. 185, p. 295.) That court cannot send a case brought into it by appeal from a Surrogate's Court, to a Circuit Court, for trial by a jury, unless there is a statute authorizing such a disposition of it, or unless that court proceeds in such cases according to the course of the civil law.
I have previously said there is no statute conferring such authority on that court; and I am of the opinion proceedings in appeals from the decrees of surrogates are now so much controlled by statute and common law rules, that it cannot be said the Supreme Court proceeds on such appeals according to the course of the civil law.
If these conclusions are correct, the only decision the Supreme Court had jurisdiction to make in this case, was one either affirming the decision of the surrogate, or reversing it and directing him to make an order that Mary Grace Patchin was the lawful wife of Henry C. Patchin, deceased, and is his widow, or reversing it and directing him to rehear the case; and that their order directing the question, whether Mary Grace Patchin, or Melvin, was the lawful wife and is the widow of the deceased, was erroneous.
I am of the opinion the evidence justified the Supreme Court in reversing the order made by the surrogate, declaring that Mary Grace Patchin, or Melvin, was not the wife and is not *Page 448 
the widow of Henry C. Patchin, deceased, and that this Court ought not to disturb the decision of the Supreme Court, so far as it reverses that order. The evidence convinces me that Mary Grace Patchin was lawfully married to the deceased, and is his widow, and if my brethren concur in this conclusion, this Court will so hold
It is proper that we should notice the orders of the surrogate, in regard to the costs of the proceedings before him. He directed that the administrator "to be appointed" should pay out of the assets of the deceased, the gross sum of $500, to one of the counsel of Mary Grace Patchin, and the further gross sum of $150 to another of her counsel; and the gross sum of $500 to one of the counsel of Maria F. Devin, and the further gross sum of $500 to another of her counsel, besides $160.75 costs of the surrogate. These sums amount to $1,810.75, and the entire value of the personal estate of the deceased, as sworn to in the petition for letters of administration thereon, was only $1,500.
Where the surrogate found authority for making these orders respecting costs, is an inquiry more easily made than answered. But it ought to be made, though neither party has appealed from either of them. The counsel of each party being similarly situated in respect to the question of costs, that is to say, each having an order for a large fee to be paid out of the same fund, probably did not advise that such orders should be appealed from. But a proper regard for the due administration of the laws of the land requires that this Court should not permit such orders to go unnoticed. It is true that the surrogate, in contests before him, may award costs to the party in his judgment entitled thereto, to be paid either by the other party personally, or out of the estate which shall be the subject of the controversy. (2 R.S., 223, § 10; 3 id., 5th ed., 367, § 25.) But in all cases where he is authorized to award costs, he must tax the same at the same rates allowed for similar services in the Court of Common Pleas, in the year 1837. (3 R.S., 5th ed., p. 367, § 23; Western v. Romaine, 1 Brad., 37; Willcox v.Smith, 26 Barb., 316.) He has no authority to make an arbitrary *Page 449 
allowance to counsel in lieu thereof. (Burtis v. Dodge, 1 Barb. Ch. R., 91; 26 Barb., 316.) Previous to the Revised Statutes, surrogates had no authority to award costs in any case. (5 Cow., 719; Shultz v. Pulver, 3 Paige, 182; S.C., 11 Wend., 363.) The Code confers no such authority on surrogates or surrogates' courts. The Code is only applicable to cases arising in surrogates' courts, after appeals have been taken to the Supreme Court. (Code, § 318; id., § 471.)
The costs awarded in this case were directed to be paid to the counsel instead of the parties, which was erroneous (26 Barb., 316); and the sums greatly exceed (probably tenfold) any amounts that could have been awarded, if taxed as required by statute; and it is a little singular that the surrogate should have required the administrator of the estate of the deceased to pay the counsel of Mary G. Patchin, after he had decided she was an impostor, and not the widow of the deceased.
But I have said enough in regard to the decision of the surrogate, on the question of costs, except that neither of the counsel in the case in this Court was counsel in it before the surrogate. I hope I have shown that surrogates cannot lawfully act as almoners of the estates of deceased persons.
My conclusions are that that part of the order of the Supreme Court which directs that the question be tried by a jury, whether Mary Grace Melvin, or Patchin, was the wife and is the widow of Harvey C. Patchin, deceased, should be reversed, and that the order of the Supreme Court, so far as it reverses the decree of the surrogate, should be affirmed; and that Mary Grace Patchin should be declared to have been the wife, and now to be the widow, of the deceased, and entitled to letters of administration on his estate; and that the Supreme Court should be directed to alter its decision, so as to conform to these conclusions, and then remit the record and proceedings in this case to the surrogate, with directions to carry such decision into effect, and that neither party should recover costs of the other, in this Court.
All the judges concurring,
Ordered accordingly. *Page 450