WESTCHESTER COUNTY.— HON. OWEN T. COFFIN, SURROGATE,— AUGUST, 1871.

## MATTER OF GATES.

*In the matter of the final accounting of* AMOS W. GATES, *administrator of* CARLTON GATES, *deceased.*

The power of the Surrogate to award costs does not authorize him, on an accounting of an administrator, appointed in a case of intestacy, to award costs of the counsel for proponents of a will which had been refused probate.

The Surrogate cannot award costs to any person not a party before him.

If the Surrogate makes such allowances, even by consent of counsel, and they are paid by the executor or administrator they must nevertheless be stricken out, if objected to on his final accounting.

THE administrator in this matter is the father and only next of kin of the deceased, whose will was refused probate by the Surrogate in June, 1870; thereupon letters of administration were issued to Amos W. Gates.

The administrator recently presented a petition for a final accounting, and, among others, cited William Romer, who claims to be a creditor of the intestate.

On the return of the citation, the administrator failed to present or file any account of his proceedings, and thereupon Mr. Romer claimed that the administrator had neglected to comply with the requirements of an order made by the Surrogate, allowing him $1,500 for his services as proctor and counsel for the proponents of the rejected will, and directing it to be paid out of the estate; and he now asks that such letters be revoked unless he comply with the order by paying him the above sum.

It appears, from the proceedings had before the Surrogate, that Mr. Romer appeared as proctor and counsel for the proponents of said alleged will, on the return of the citation, and on the next day, to which the matter was adjourned, but not subsequently; that the taking of the testimony in regard to the validity of the alleged will occupied many days subsequent to the last appearance of Mr. Romer's name on the record; that ultimately the alleged will was refused probate; that in the order rejecting it a provision was inserted directing the costs and expenses of all the parties to be paid out of the estate, the respective amounts to be fixed by an order to be thereafter made. Shortly thereafter, an order was made and filed fixing the sum to be allowed to each counsel engaged in the matter, Mr. Romer not being named among them. In December, 1870, the Surrogate made another order allowing Mr. Romer $1,500, as above stated.

The counsel for the administrator insists that this last order is illegal and cannot be enforced, because the Surrogate had no power to make it.

WILLIAM ROMER, *in person, and by* J. W. MILLS, *of counsel.*

R. W. VAN PELT, *for administrator.*

THE SURROGATE.— This is the first occasion I have

had to examine into the question of costs and allowances in this court. I have now given it some consideration, and, without going into any minute history of the subject, I find that before the adoption of the Revised Statutes, Surrogates had no power to award costs, and that an order awarding costs was *coram non judice* and void. (*Reid* v. *Vanderheyden*, 5 *Cow.* 719.) On the adoption of the Revised Statutes, however, power to award costs in cases of contests before them was given, but such costs had to be taxed at the rates allowed in the Court of Chancery for like services. (*Halsey* v. *Van Amringe*, 6 *Paige*, 12.) In 1837, an act was passed directing such costs to be taxed at the rates then allowed in Courts of Common Pleas, and such is still the law. (*Devin* v. *Patchin*, 26 *N.Y.*, 441)

In the case of *Halsey* v. *Van Amringe*, (*supra*,) the Chancellor held that the Surrogate was not authorized by the Revised Statutes to make an arbitrary allowance for services and counsel fees, to be paid by one party to the other, without reference to the taxable costs allowed for similar services in other courts, and the doctrine is reaffirmed in 1 *Barb. Ch.* 77, and in *Lee* v. *Lee*, (16 *Abb. Pr.* 127.)

The claim of Mr. Romer being for services rendered on behalf of the proponents of the will during the contest relating thereto, does not constitute him a creditor of the intestate, so far as this claim is concerned. The only creditors to whom I am authorized to decree payment on a final settlement are those whose claims arise on contracts made with the deceased. Whatever claim he may have in this regard is against the administrator, and I have no power, on this or any accounting, to decree its payment. The order allowing Mr. Romer a gross sum for his costs and services is wholly unauthorized by any statute I have been able to find, and it was not in

the power of the parties to the litigation to make an agreement in reference thereto, on which he could base a claim against the estate of the deceased. Again, this order under which Mr. Romer claims, is invalid, for the reason that in a proper case the Surrogate can only award costs to a *party*, and not to counsel of parties, and then, only in the mode and to the extent allowed by the statute. (*Willcox v. Smith*, 26 *Barb.*, 316.) In this last case, it seems that allowances to counsel were made by agreement of counsel and parties, and were held void.

In the case of *Devin v. Patchin*, above referred to, it appears that the Surrogate of New York directed a gross sum of $500 to be paid to one of Mrs. Patchin's counsel, and a gross sum of $150 to another. He also directed the gross sum of $500 to be paid to one of Mrs. Devin's counsel, and the like sum of $500 to another. There was an appeal taken from the decree on other questions, but none from the orders awarding these allowances. These orders seem to have been acquiesced in, which is tantamount to a positive agreement of the parties as to these allowances. In that case, the allowances to counsel exceeded the amount of personal estate, as sworn to in the petition for letters of administration. Although these orders in regard to costs were not appealed from, yet the Court of Appeals took occasion to review them, saying that that court could not permit them to go unnoticed, and declared them illegal and unauthorized, and held that Surrogates could not award costs to any person not a *party* before them, and that they could not lawfully act as almoners of the estate of deceased persons. There is this serious objection to making these arbitrary allowances: where a Surrogate makes such allowances, even by consent of counsel, and they are paid by the legal representative, and credited to him in his accounts, as finally rendered, if objected

to by any party interested, they must be stricken out and disallowed, and he must account for and pay the same into the fund, although by so doing he has to pay them out of his own pocket. Again, ordinarily, a Surrogate may punish a party for contempt, who refuses to obey a legal order made by him. Can this Court punish a party for contempt, or revoke his letters, because he refuses to obey an illegal order? The statute gives this power to punish for contempt, *only* in case of disobedience to *lawful orders*.

I am aware that a practice obtains in many of the Surrogates' Courts, in various counties, of making such allowances, based on the agreement of opposing counsel, which practice has doubtless sprung from the fact that the existing laws make no suitable provision for costs in these courts; and, although my convictions as to the proper construction of the statute, and as to my duty in this respect, may be distasteful to the bar generally, I must yet, in my judicial capacity, declare these convictions, in order that it may be understood that hereafter I can only award costs in pursuance of the provisions of the statutes, as construed by courts to whose decisions it is our duty to submit.

I have carefully considered the whole subject, and have deliberately arrived at this result. My disposition is to be liberal to counsel, but, in order to be so, I cannot be expected to disregard the plain provisions of statutes, and the decisions of the highest judicial tribunal of the state.

The application of Mr. Romer is denied.