## John G. Vanderheyden v. James Reid.

Upon appeals from surrogates under the act of the 21st of March 1823, this court is to proceed as the late court of probates might have proceeded, and as right and justice shall require.

There are no records of the late court of probates, showing what course that court would or might have taken, in the case of a contested and doubtful question of the sanity of a testator.

Both the court of probates and the prerogative court of the colony were formed upon the model of the ecclesiastical courts of England, as to the subjects of their jurisdiction; but it does not appear, that they were bound to follow the practice of those courts.

This court having the like jurisdiction, may exercise it, by such methods of proceeding, as are usual and not forbidden by the constitution and laws.

The constitution does not prohibit a common law proceeding, in aid of those courts, which are not bound to proceed according to the course of the common law.

According to the course of the civil law, in cases of appeal, the cause is reheard at large, and new testimony may be introduced.

If this appeal had been to the court of probates, the judge of that court might either have decided the facts himself, or have called to his aid the verdict of a jury.

This court on such appeals, must be governed by the laws and principles of decision which governed the court of probates; but as to methods of proceeding, it may follow its own practice.

This court now having jurisdiction of wills of personal goods, and also of wills of lands, may most fitly proceed in the same manner, in both cases.

This case being one of great doubt and difficulty, there being many witnesses, and much contradictory testimony; an issue was directed, to try the sanity of the testator by a jury.

*1825.*
*7th, 8th, 9th,*
*11th, 12th and*
*13th April.*

*Appeals from surrogates.*

*Testamentary causes.*

APPEAL from a decree of the surrogate of Rensselaer county, in a testamentary cause.

Samuel Vanderheyden of the county of Rensselaer, died on the 27th day of November 1823, leaving a large real and personal estate; and having first executed a paper writing bearing date the 14th day of November 1823, purporting to be his last will and testament.

On the 10th of December 1823, James Reid, by his counsel, appeared before the surrogate, presented the said paper writing, and prayed that the same should be allowed and approved by the surrogate, as the last will and testament of

the said Samuel Vanderheyden. A caveat had previously been entered against the proving of the will.

Citations were therefore issued by the surrogate, directed to John G. Vanderheyden a brother, and to others who were next of kin to the deceased, to show cause against the allowance of the will.

On the return of the citations, the parties appeared and the cause was contested. The objection to the will, was, in substance, that at the time of the alleged execution thereof, the said Samuel Vanderheyden was not of sound and disposing mind and memory.

On this question of fact, many witnesses were examined. The surrogate, on the 20th of April 1824, made a decree, that the said paper writing was duly proved as such will, and was valid and effectual in law. From that decree, the present appeal was prosecuted to this court.

The surrogate's return to this court contained a concise history of the proceedings, with which was transmitted a copy of the will; and also the testimony of the witnesses, which had been reduced to writing, in the form of depositions.

MR. BUEL and MR. CUSHMAN for the appellants.

MR. SPENCER and MR. MITCHELL for the respondents.

The principal question of law which was discussed, regards the power of the court of chancery, to award an issue to be tried by a jury, in an appeal upon a testamentary cause. The appellants contended, that in a case of doubt, the court can and will award an issue. The respondents contended, that the court has no such power, and that upon the testimony before the court, the decree should be affirmed.

THE CHANCELLOR. The great question in this cause, is, whether Samuel Vanderheyden deceased, was of sound mind or not, when he executed his will; and this is a question of fact. It has been ably discussed by counsel; I have considered it, with attention; and I find two opposing masses of testimony, of which, each is so nearly equal in weight, to the other, that it is impossible to pronounce with any clear satisfaction of mind, that either preponderates. Such cases must be determined; but while it is the duty of courts to decide, it

is equally their duty, not to decide, until all the light which can be afforded, has been obtained.

This question is obviously proper for the trial by jury; and in a case of similar uncertainty and doubt, upon any other question, this court might and would award an issue, in order to obtain farther information by the verdict of a jury. But it is insisted, that in this case, the court has no power to award an issue.

This court now has the jurisdiction and powers, which belonged to the court of probates, while that court was in existence. The fourth section of the act of the twenty first day of March 1823, provides, that all the proceedings in appeals from surrogates to this court, shall be in the manner and according to the rules then in use, in appeals to the court of probates: the fifth section provides, in respect to cases then depending before the court of probates, that such proceedings shall be had thereon in this court, as might have been had in the court of probates: and the sixth section enacts, that in cases where any appeal had been taken and the cause had not been returned to the court of probates, the return should be made to this court, and such farther proceedings should be had thereon, as right and justice should require.

The language of these three sections in respect to proceedings in this court, is somewhat different, in the three cases: but it can not be supposed, that the legislature intended to establish any essential difference between either of these cases and the others, in respect to the powers of this court, or the course of its proceedings. These provisions confer authority; they are not expressed in the language of limitation or restriction; and the sense of all the three sections, is, that upon every appeal from a surrogate, this court shall proceed, as the court of probates might have proceeded, and as right and justice shall require.

The late court of probates had with some exceptions, all the powers and jurisdiction in testamentary matters, which before the independence of the state, had been held by the governor of the colony, as judge of the prerogative court or court of probates of the colony. The course of proceedings in the prerogative court of the colony, or in the court of probates of

the state, was never defined or regulated by any statute.  The records of the prerogative court of the colony, can not now be found.  The late court of probates had some rules of practice ; but none of them had any application to this question. The records of that court are preserved ; and they show what was done in the cases which came before it ; but they do not show, what procedure that court might have adopted, in the case of a contested will, or where the sanity of the testator is a question involved in doubt and uncertainty.

*1825.*

*Vanderhey- den v. Reid.*

The prerogative court of the colony and the late court of probates were formed upon the model of the ecclesiastical courts of England, having jurisdiction of testamentary causes. It is clear, that this was the foundation of the prerogative court and the late court of probates, in respect to the subjects of their jurisdiction : but it does not appear, that either of those courts, ever held itself bound to pursue the practice and methods of trial, used in the ecclesiastical courts of England,. in exclusion of the practice of the courts of equity, or of those of the common law.    So far as the practice of the late court of probates, can be traced, it was analogous to that of the court of chancery.

This court then, is invested with a full jurisdiction over this cause ; and is bound to exercise that jurisdiction : but the methods of proceeding in the cause, are not defined by any statute, and are not regulated by any rule, either of the late court of probates or the antecedent court of the colony.    In such a case, it must follow, that the court having jurisdiction, may exercise it, by such methods of proceeding, as are usual in other courts, and not forbidden by the constitution and laws.

The constitution provides, that no new court shall be instituted, but such as shall proceed according to the course of the common law ; excepting subordinate courts of equity.    This is a regulation in favor of the course of the common law : and the spirit of the provision is, that modes of proceeding unknown to the common law, shall not be extended or applied to cases, in which they had not been before used.    But while the course of the common law can not be impaired or restric-

1825.

VANDERHEY-
DEN
v.
REID.

ted, it may be employed in aid of those courts, which are not bound to adopt it.

Among the English courts which proceed according to the course of the civil law, the court of chancery alone, resorts to the trial by jury, for the investigation of truth, in cases of doubt. This power is not conferred on that court, by any statute ; and I know no law or reason, forbidding an English prerogative court to award an issue for the trial of facts.

By the practice of the civil law and of the courts which follow that practice, a cause removed to a superior tribunal by an appeal, is reheard at large, upon the facts as well as the law. It is treated as if it had been commenced in the superior court ; the parties may introduce new proofs ; and any proceedings take place, which law and justice may require, for the investigation of truth. Code book, 7 tit. 63. sec. 4. Huber. Prelect. book 19. tit. 7. sect. 4. Wood's civil law, 379. Clerk's Praxis tit. 54. 1 Browne's civil and admiralty law, 500. 501. 2 Browne's civil and admiralty law, 436. 437. Hall's admiralty practice, 101. 1 Bro. Parl. cases, 465. 2 Bro. Parl. cases, 351. 3 Black. comm. 455.

The same practice prevails in the courts of the united states, upon appeals, in cases of admiralty, maritime and prize jurisdiction. 3 Dall. 327. 5 Cranch, 281. 7 Cranch, 22. 107. 1 Wheat. 9. 3 Wheat. 77.

If the court of probates followed or might have followed the course of the civil law, and this appeal had been taken to that court, the cause would have been open to new evidence, to the examination of the parties against themselves, and to every method of investigating truth, not unknown to our courts. The judge alone might have decided the facts, as the chancellor may do in this court ; but though the judge had power to decide, he also had power I conceive, to take proper measures to enable him to make a just decision, and to call to his aid, the verdict of a jury, upon disputed and doubtful facts. He had power to award an issue, in any case where that measure might be proper and necessary ; the same discretionary power which this court has, to resort to the trial by jury, in those cases of uncertainty, in which that species of trial is so excellent, in the investigation of truth.

But this appeal is now made to this court; which like the late court of probates, consists of a single judge, and proceeds in many respects, according to the course of the civil law; but which also, has its own methods of investigating truth, and rules of evidence, very different from those of the Roman law. The laws and principles of decision which governed the court of probates, in determining the rights of parties, must equally govern this court; and upon the same facts, this court must decide, as the court of probates was bound to decide. But in respect to mere methods of proceeding to ascertain facts, this court may adapt them to its own machinery and its own established course of proceeding. If witnesses are to be examined upon an appeal from a surrogate, may not this court employ its examiners to take their testimony; or if accounts are to be taken, may not this court act by its masters? Yet, the court of probates had no such officers. The jurisdiction formerly possessed by the court of probates, being now tranferred to this court, it may be exercised here, in the course of procedure usual in this court, in other cases; unless some special method of procedure is expressly prescribed by law. But no such special method is prescribed; and the provision of the statute, that this court shall proceed, as the court of probates might have proceeded and according to right and justice, merely gives power, without imposing restraints or exclusions, in this respect.

When a will of land depends upon the sanity or insanity of the testator, it can not be established or destroyed in the courts of law, without the verdict of a jury. The same course is pursued in the English chancery and in this court, whenever the question of the testator's mental capacity, is doubtful. If the question here, were upon the validity of this will, as a devise of land, an issue would be directed, as a matter of course and of right. In general, it is in the discretion of the chancellor, either to decide doubtful questions of fact, or to refer them to a jury; but in the case of a contested will of land, the propriety of the trial by jury is so evident, that it is now held to be the duty of the court, and the right of the parties, that such a trial should take place. 3 Black. com. 452.

1825.

VANDERHEY-
DEN
v
REID.

3 Woodeson's lect. 477. 2 Vernon, 8. 9. 76. 5 Ves. 649. 9 Ves. 610. 611. 1 Madd. 258. 259. 260. 261. 2 Madd. 476. 5 John. ch. 118.

But if the will is of personal estate, the decision of the ecclesiastical courts, is in England, conclusive. Thus, a will of personal and real estate, may be there adjudged both valid and void, by different tribunals. This result of an artificial division of jurisdictions, can never be proper, where it may be avoided. That a will should be adjudged valid, because the testator who made it, was of sound mind ; and that the same will should be adjudged void, because the same testator was insane, is a result which should never take place, under one system of laws. But still more singular, would be the anomaly, if the same court were, in the case of a contested will of real and personal estate, bound to send the disputed question to a jury, in respect to the land, and also bound to decide the same disputed question, without a jury, in reference to another species of property.

Such an incongruity is avoided, by taking one course of investigation, whether the will is of real or of personal estate, or of both comprised in one instrument. This court now having jurisdiction of wills of personal goods, and also of wills of land, it may most fitly apply the same method of investigating facts, to both cases.

In this case, thirty witnesses have been examined before the surrogate ; and their testimony leaves it utterly uncertain, whether Samuel Vanderheyden was of sound mind or not, when he made his will. His last illness continued some weeks ; and it seems, that during that period, he was sometimes, sane in mind, and at other times, deprived of reason. He seems to have been during that period, in the twilight between sanity and insanity, fluctuating variously, between the two points. The real state of his mind, when he made the will, is upon all the testimony, a most doubtful question. Objections are made to the competency of some of the witnesses ; but it is not now necessary to discuss those objections ; for whether the testimony of those witnesses is admitted or rejected, the case still remains one of great uncertainty. This case is in

its nature and circumstances, eminently proper for the trial by jury. Much of the testimony consists of the opinions of the witnesses concerning the mental condition of the testator. In weighing their testimony, much should depend on the credit to be given to the different witnesses ; but as their testimony now stands in writing, all of them are equally credible. It is fit, that they should be examined before a jury ; who may hear and see them, and may with the advantages of open examination and oral testimony, give due credit to each witness. In cases of doubtful and contradictory testimony, where all the testimony of every witness must be accurately weighed, it is sometimes, important, that the direct examinations and the cross examinations should be separated and distinguished from each other ; but in this case, the depositions returned, make no such distinction. Finally, the question whether this testator was sane in mind, or not, when he made his will, stands involved in a chaos of uncertain and contradictory testimony ; and it is impossible to repose upon either conclusion, with any discreet satisfaction. If any case was ever proper for the trial by jury, this in my opinion, is such a case : and an issue is accordingly directed.