---

## *In re* HAMILTON'S WILL.

*(Surrogate's Court, New York County.  January 12, 1891.)*

MARRIAGE—WHAT CONSTITUTES—SUFFICIENCY OF EVIDENCE.

> On a question whether the contestant of a will was the wife of a person living at the time she underwent the ceremony of marriage with testator it appeared that she long cohabited with such person; that her brother had written their names as husband and wife upon a hotel register; that she had told a witness that she remained with him after he became a total imbecile because she was married to him, and he had been a good husband; that she had also said her friends advised her to get a divorce from him because of his drunkenness and worthlessness; and that the alleged husband, in her presence, had testified under oath, in a legal proceeding, that they were married. *Held*, that this, with other like evidence, was sufficient to establish a marriage, even though the contestant, after first testifying that her relations to such person were purely those of devoted friendship, afterwards swore that they were those of man and mistress.

Proceeding by Eva L. Steele to contest the probate of the will of Robert Ray Hamilton.

*Elihu Root*, for proponent.    *Chas. W. Fuller*, for contestant.

RANSOM, S., (*orally.*) The law applicable to this proceeding is well settled in this state, and it is only necessary to apply it to the facts which have been adduced in evidence. The trial has been one of great interest to the parties to the proceeding, and its result to them is a matter of deep concern. Whether the contestant was or not, at the time of the ceremony of marriage between her and Robert Ray Hamilton, a woman worthy to be the wife of an honorable man, is not a question for me to decide, and I do not pass upon it. But in his opinion she was. Acting upon facts which had come to his knowledge, she was worthy, and he was satisfied to make her his wife. He at the time believed that she had the right, in law, to assume the marital relation. Whether such belief was induced by fraud, perpetrated by the contestant and by others assisting her, is not a question for me to decide, and I therefore express no opinion. In this proceeding, which is brought to inquire into all the facts and circumstances attending the execution of the paper propounded as the last will and testament of Robert Ray Hamilton, we are obliged to consider as a preliminary question the right of the claimant to appear and be heard in the proceeding as his widow, and as such entitled to a share in his estate, and to contest the validity of the paper propounded. Counsel on both sides have well stated the question, which is one of fact, to be determined before we make any inquiry in regard to the *factum* of the paper offered for probate. The surrogate in this proceeding, from the beginning to the end, not only in regard to the nature of the proceeding and this preliminary inquiry, but in respect to the *factum* of the paper propounded, sits as a jury. It is his duty to pass upon the evidence, and, having ascertained the facts, his finding thereon, upon a conflict of evidence, is, in my judgment, equivalent to the finding of a jury, and must settle forever in all courts the question of fact involved. If he errs in his application of the law, the appellate courts will correct his mistake, but they are powerless, as they should be in the proper administration of human affairs, to inquire into the facts which he, as a jury, has determined, as I think, for all time.

I approach the disposition of this preliminary question with much deliberation, and with a full appreciation of the responsibility which rests upon me to do, as nearly as human mind and heart can do, justice between the contestant who is here asserting her claim as the lawful widow of Robert Ray Hamilton, and the family of that man, who are here denying that she was ever his wife, and that she has any *status* to appear in this present proceeding. I have given very careful attention to the testimony given by every witness, and I have listened to and have been aided by the arguments of counsel on both sides, upon the facts and upon the law. Suggestions have been made by them which probably would have escaped my attention but for their presentation, but the law which must be administered in this case is that which is well understood by us all, and in respect to which there is no disagreement between counsel. If this case had been tried before a jury, certain defined issues would have been framed and passed upon by the court, and then presented in writing to the jury for them to say "Yes" or "No," and upon their answer would depend the determination of the question of fact involved. Here no such formal issues have been framed, nor are they needed. They are presented by the pleadings, namely, the answer to the petition for probate, filed by this contestant, (who asserts her right to contest as the widow, and that question depends, of course, upon her lawful marriage with Hamilton,) and the reply thereto, served upon her and filed in court by a legatee as a party to the proceeding. The issue here presented is whether the contestant is the widow of Hamilton. There was a ceremony of marriage between them, the legality of which could not have been questioned if at that time she and Hamilton were capable, in law, of contracting a marriage. But, if she were incapable in law of making such a contract, then the ceremony had no significance, and the alleged marriage was a nullity, and must be so de-

clared. Whether that ceremony was or was not brought about by fraud is immaterial here. The only question for me to consider is, had she the right to make a matrimonial contract with Hamilton? Contestant's counsel has conducted the case from the beginning, not only with great ability and fidelity to the interests of his client, but with candor, and whatever an honorable, industrious, and skillful advocate could find to aid his client he has presented in a most attractive manner. He has proceeded in his argument necessarily upon the premise that the relation between Joshua J. Mann and Eva L. Steele, his client, was in its origin meretricious, and that there is no evidence that that relation ever became marital. If that premise is sustained by the facts in the case, judgment must be for her, for in this proceeding it is no concern of ours whether her relations were, as she described them yesterday, meretricious, improper, those of a mistress, or whether they were what she first said, or, as I believe, meant to say, that they were not improper, and not marital, but were rather those of a devoted female friend to a man who was in the last stages of imbecility.

I make no comment upon the testimony given by many of the witnesses of her and Mann's declarations upon the subject of their marriage. It will not be argued that those declarations were not inadmissible. They do not of themselves establish a marriage, but they do disclose one of two things: either an honest emotion and sentiment of their hearts at the time they were made, or they disclose a determination on their part to make these declarations for the purpose of protecting themselves against the obloquy in the community by concealing their real relations to each other. For the sake of certainty I shall read briefly from a very late decision from our court of appeals the general proposition on this subject, a case which has not been referred to by counsel, but which, no doubt, is familiar to them. The case of *Gall* v. *Gall*, 114 N. Y. 109, 21 N. E. Rep. 106, is the case to which I allude. It is proper to say that this case was decided by a majority vote of the members of the court. We have not the benefit of the dissenting opinion, if any were written, but the proposition which I propose to read will be found fully supported by every case in this state upon this subject. The reason for the dissent was probably a belief of the minority of the court that the facts in the case did not warrant the application of the principle of law set forth. The court say: "The cohabitation, apparently decent and orderly, of two persons opposite in sex, raises a presumption of more or less strength that they have been duly married. While such cohabitation does not constitute marriage, it tends to prove that a marriage contract has been entered into by the parties. Where, however, the cohabitation is illicit in its origin, the presumption is that it was continuous till a change in its character is shown by acts and circumstances strongly indicating that the connection has become matrimonial. It is sufficient if the acts and declarations of the parties, their reputation as married people, and the circumstances surrounding them in their daily lives, naturally lead to the conclusion that, although they began to live together as man and mistress, they finally agreed to live together as husband and wife."

What do the facts in this proceeding establish? Assume, for the sake of argument, that the relation between Mann and the contestant was, in its origin, meretricious, does the evidence satisfy a reasonable mind that it subsequently became matrimonial? Is it likely that the relation of lover and mistress could continue years beyond the capacity of the man or of the woman to reciprocate such attentions as might be expected between lover and mistress? Is it likely (and it is with probabilities that we must deal to some extent) that the contestant voluntarily made a false statement to the unimpeached witness, Mrs. Badger, upon the subject of her relations to Mann, when, as she said, he was a total imbecile, when he had ceased in any possible way to be attractive to her as a lover? Or was she tied to him at that time, as she says, by her

sense of obligation to him as his wife, because prior to that time she had been married to him and he had been a good husband? Is it probable that the contestant would have made the statement to this witness that she had been advised by some of her friends, in consequence of his condition, his habits, his drunkenness, his utter worthlessness, to get a divorce from him if the relation she had theretofore sustained to him had been that of his mistress? It may be that she would, but I have no perception that can carry me to that point. I believe that the contestant, when she had this conversation with Mrs. Badger, stated the honest convictions of a womanly heart and an affectionate nature towards a man who at some time prior thereto had been to her the man of her choice, of all the men in the world, as her husband.

This case proceeds: "A present agreement between competent parties to take each other for husband and wife constitutes a valid marriage, even if not in the presence of witnesses." Now, it is claimed by the contestant that there is no proof that there was ever any promise of marriage between these people. I do not recollect any direct evidence of a contract between them or evidence directed to that particular inquiry: "Did you ever agree between you to become man and wife?" If any evidence of that character is in this case, I have not been able to remember it. But the contestant testified that she never did make any contract of that character, and that he never made any such contract with her. If her testimony is to be believed, and that no words of that import were spoken between them, we are still just this side of determining that there was no valid marriage between Mann and herself, because the law, in the language of the court of appeals, is that such a marriage may be proved by showing actual cohabitation as husband and wife, acknowledgment, declarations, conduct, repute, reception among friends, neighbors, relations, and the like. Upon the proofs in this case, can any unbiased, unprejudiced man come to any other conclusion than that Joshua J. Mann and Eva L. Steele were lawful husband and wife from the time, or from near the time, they first met to the very day when the ceremony of marriage was performed between her and Hamilton? Whether Hamilton knew of the intimacy of Mann and Eva, and all that such intimacy implied, is not a question for me to decide. Even, if he, as a lawyer, had passed upon a confession made to him, if you please, by Eva and by Mann, of their relations, it is of no consequence. If they had made this contract which is established by repute and conduct and declaration of marriage, it was utterly impossible for Hamilton, if he were willing, to contract a lawful marriage with this contestant. The evidence satisfies me that if the relation between Mann and the contestant was, in the beginning. meretricious, it subsequently became matrimonial. I ought to refer to an item of evidence which has very great weight with me upon this point. The motive of the contestant in confessing (after first denying) her improper relations with Mann is easily discovered if she intended to tell an untruth on the subject, for, if she could persuade the court that she was lawfully married to Hamilton, she would have the valuable pecuniary rights of his widow. Hence her statement is to be taken with at least sus- picion, and must be carefully examined and weighed against the evidence of others who have no interest to subserve, and which contradicts it. Joshua Mann, in her presence and hearing, (and in my view, after consultation with her upon this very point of his testimony,) went upon the witness stand in the court-room, in Pennsylvania, and declared, under the obligation of his oath, that he met her in Philadelphia several years before and married her, and that she was his wife. There can be no doubt in the mind of anybody who listened to the testimony about the truthfulness of the witnesses who testified to hearing him so swear in her presence. But, quite aside from all the evidence of the other witnesses who were present at this same trial, members of her family, who saw them both, aside from the strong evidence which is given by the signature upon the hotel register of her own brother writing

her name and that of Joshua J. Mann as husband and wife, the oath of Mann, at that time, where he had no motive on earth to tell a lie, must overcome the oath of the contestant upon the witness stand here, when she had such vital interests at stake. I regret that duty compels me to say anything in the way of criticism of this contestant, and I shall content myself in the discharge of that duty by saying simply that substantially her evidence is unworthy of belief. I do not believe her. And I hold and decide in this case that on the 7th day of January, 1889, the date of the ceremony of marriage between herself and Robert Ray Hamilton, this contestant was the lawful wife of Joshua Mann, and that her marriage to Robert Ray Hamilton was void, and that, consequently, she has no standing in this court to contest the probate of the paper propounded as his last will and testament.