In the Matter of the Application for the Probate of the Last Will and Testament of KATE L. LAUDY, Deceased.

*Probate of a will — evidence of its due execution — signature of the testatrix directly after the attestation clause — decision of questions of fact by the General Term.*

Upon an application for the probate of an instrument alleged to be the last will and testament of a decedent, the proponent did not call any witness familiar with the handwriting of the deceased to testify as to her handwriting, nor did the subscribing witnesses say that they saw her write it; on the other hand, no attempt was made to show that it was not her signature.

One of the attesting witnesses testified that, in response to the request of the testatrix that he should become a subscribing witness to the will, he suggested an objection to signing a paper without understanding it; the testatrix then simply unfolded the paper, showing him that it was her will, and saying that she did not think he ought to be afraid to sign it after she had signed it, at which time her signature was there or there was some signature above the place where he signed.

*Held*, that, there being but one signature above that of the witness, which purported to be that of the testatrix, the evidence was abundant to require a finding that the signature was that of the testatrix, and that the testimony contained a declaration of the testatrix that she had signed the instrument.

A testator by signing his name to his will after the attestation clause makes it a part of his will, and if nothing intervenes between the attestation clause and the signature, the subscription is at the end of the will within the meaning of the statute.

The General Term of the Supreme Court has the same power to decide questions of fact upon an appeal from a decree of a Surrogate's Court refusing to admit a will to probate, as the surrogate had when the proceeding was before him.

APPEAL by the Woman's Hospital in the State of New York and another, legatees named in the last will and testament of Kate L. Laudy, deceased, from a decree of the Surrogate's Court of the county of New York, entered in the office of the clerk of the New York Surrogate's Court on the 24th day of November, 1893, adjudging that the said instrument was not attested and executed in the manner prescribed by law for the attestation and execution of last wills and testaments.

*Parsons, Shepard & Ogden,* for Peter Cooper Union, appellant.

*P. H. Vernon,* for Woman's Hospital, appellant.

*Daniel G. Rollins,* for the contestant, respondent.

PARKER, J.:

The learned surrogate, at the close of the examination of the attesting witnesses to the instrument propounded by the executor as the last will and testament of Kate L. Laudy, held that certain of the substantial formalities, which the statute requires to be observed in order to entitle an instrument to probate, were omitted, and as a necessary sequence of such determination probate was denied.

The statute requires that a last will and testament shall be executed and attested in the following manner:

" 1. It shall be subscribed by the testator at the end of the will.

" 2. Such subscription shall be made by the testator in the presence of each of the attesting witnesses, or shall be acknowledged by him to have been so made to each of the attesting witnesses.

" 3. The testator, at the time of making such subscription or at the time of acknowledging the same, shall declare the instrument so subscribed to be his last will and testament.

" 4. There shall be at least two attesting witnesses, each of whom shall sign his name as a witness at the end of the will, at the request of the testator." (2 R. S. 63, § 40; 3 id. [7th ed.] 2285.)

That the will was duly published and properly attested was not questioned, and there remains for consideration whether the other two requisites of a valid execution were complied with:

1. Did the testatrix subscribe the instrument at the end of the will?

2. Did she make such subscription in the presence of each of the attesting witnesses, or make due acknowledgment thereof to each of them?

The will appears to have been drafted some little time prior to the date of its attempted execution, which did not take place under the direction of a person familiar with the execution of such instruments. It is not surprising, therefore, that the full importance of the attestation clause, which had properly been made a part of the instrument by the scrivener, was not appreciated, and that the testatrix, instead of signing the instrument before the attestation clause and opposite the seal, signed it next after such clause. So much of the instrument as is necessary to present the manner in which it was executed reads as follows:

" In witness whereof I have hereunto set my hand and affixed my seal the —— day of June, in the year of our Lord one thousand eight hundred and ninety.

"————— [L. S.]

" The foregoing instrument was at the date thereof signed, sealed, published and declared by the said testatrix in our presence as and for her last will and testament, and thereupon we, at her request and in her presence and in the presence of each other, subscribe our names as witnesses hereto.

"KATE L. LAUDY.
"WILLIAM H. PORTER, M. D.
"CORNELIA N. EDWARDS."

On our way to this point we have remarked that the testatrix signed the instrument after the attestation clause instead of before it.

It should be said that the respondent does not admit that the evidence justifies such an assertion, but it seems to us quite clearly otherwise. It is true that the proponent did not call any witnesses familiar with the handwriting of the deceased to testify that it was her signature, nor did the subscribing witnesses say that they saw her write it, while on the other hand no attempt was made to show that it was not her signature.

That it was seems not to have been questioned, contestant's point being, as shown by the cross-examination of the attesting witnesses, that she did not sign it in the presence of the subscribing witnesses, or make such acknowledgment as would satisfy the demands of the statute. But while no one familiar with her handwriting, or a person qualified to express an opinion of the genuineness of handwriting, after examination of established signatures, was called upon to say whether it was her signature, the evidence was abundant not only to justify, but to require a finding that the signature was hers.

In addition to the position of the signature of testatrix on the paper, between the last line of the attestation clause and the signature of Dr. Porter, concluding as it did with a flourish of the pen which ¸xtended down to and upon the line where Dr. Porter wrote his name, we have the testimony of the doctor whom Mrs. Laudy invited to become a subscribing witness to the will. He said, that in response to her request he suggested an objection to signing a paper without understanding it, " and as I remember it she simply

unfolded it and showed me it was her will, and remarked that I ought not to be afraid to sign it after she had signed it, and as I remember it, her signature was there, or there was a signature above where I signed." This testimony contains not only the declaration of the testatrix that she had signed it, but also an assertion of the witness that there was a signature above his, and an examination of the paper discloses that there was but one signature above that of the witness, and that was Mrs. Laudy's. The record contains other evidence tending to show that the signature to the will was that of the testatrix, but as it will have to be referred to when we come to the question whether the testatrix acknowledged her subscription to the will to each of the attesting witnesses, we refrain from its further consideration here. Whether the signing by the testatrix was at the end of the will, as required by statute, is no longer an open question. It was before the court of last resort in *Younger* v. *Duffie* (94 N. Y. 535), where it was held that the testator by signing his name after the attestation clause makes it a part of the will, and if nothing intervenes between it and the signature, the subscription is at the end of the will within the meaning of the statute.

The evidence did not warrant a finding that the testatrix subscribed at the end of the will in the presence of the attesting witnesses, but the statute is in the alternative and provides that when not so subscribed it "shall be acknowledged by him to have been so made to each of the attesting witnesses." This latter provision of the statute is fully complied with by an exhibition of the instrument bearing the testator's signature properly subscribed, accompanied by a declaration to the witnesses that it is his last will and testament, and supplemented with a request that the witnesses attest the same. (*Matter of Philips*, 98 N. Y. 267.)

We have then to inquire whether the evidence requires a finding that the testatrix properly acknowledged the execution of the will. In doing this we shall have in mind that, by an express provision of the statute, this court has the same power to decide the questions of fact which the surrogate had. (Code Civ. Proc. § 2586.) We are not, therefore, hampered by the rules which ordinarily obtain in reviewing findings of fact of a trial court.

If the conclusion at which we shall arrive, with the aid of a more

careful argument than the surrogate was favored with, shall differ from his determination, we have but to give expression to it by finding the fact to be as we think the evidence requires. The authorities cited by the appellants, holding that wills should be admitted to probate even where the attesting witnesses are unable to recall any of the events attending the execution of the will, because of the recitals in the attestation clause, have no application here. It affirmatively and indisputably appears that the attesting witnesses to Mrs. Laudy's will did not read, or hear read, the attestation clause. Neither does section 2620 of the Code of Civil Procedure aid us, except in so far as it indicates the legislative policy to be not to permit a testator's intended disposition of his property to be thwarted by the absence, incompetency, dishonesty or death of the subscribing witnesses when other proof which it points out shall be attainable. That section provides : " If all the subscribing witnesses to a written will are, or if a subscribing witness whose testimony is required is dead, or incompetent, by reason of lunacy or otherwise, to testify, or unable to testify, or if such a subscribing witness is absent from the State, or if such a subscribing witness has forgotten the occurrence, or testifies against the execution of the will, the will may, nevertheless, be established upon proof of the handwriting of the testator, and of the subscribing witnesses, and also of such other circumstances as would be sufficient to prove the will upon the trial of an action." No attempt was made beyond the examination of the subscribing witnesses to make such proof as the section quoted suggests.

The subscribing witnesses were Dr. Porter, the attending physician, and Mrs. Edwards, the nurse then in charge of testratrix. Dr. Porter testified as follows : " I am a physician, forty years of age, and reside at 1674 Broadway. I knew Mrs. Kate L. Laudy in her lifetime. The signature of William H. Porter, M. D., on the paper now shown me, marked with the filemark of this court and filed for probate on September 12, 1893, is my signature. The circumstances under which that signature was made are as follows : It was while I was attending Mrs. Laudy, and she asked me one day to sign the paper, and I rather objected to do it, as I didn't know what I was going to sign my name to, and, as I remember it, she simply unfolded it and showed me it was her will, and remarked that I

ought not be afraid to sign it after she had signed it, and, as I remember it, her signature was there, or there was a signature above where I signed, but I didn't stop to look into the matter véry closely one way or the other. I just had a glance at it, and I signed my name to it. Mrs. Laudy and this lady, Mrs. Edwards, were present, and myself, at the time I signed this paper. I think there was no other person in the room. I don't remember that there was anything else said or done beyond what I have stated. I had made my regular professional visit and had seen Mrs. Laudy, and as I was about to go out she asked me if I would sign her will. Those were the words she used, and I said I didn't know just what I was signing, and she opened it only at the bottom. I presume that the paper now shown me is the paper, because that is my signature. As I remember it, Mrs. Laudy just laid the paper down in this way on the table, and that exposes that part of the paper, and there was no signature to be seen as it laid in this way on the table. No writing on it at all that I could see, except under the margin, and I rather objected to signing a document I didn't know anything at all about. I didn't know at all what I was signing or might be signing, and then she carelessly opened it, and she said, 'It is my will;' she had signed it, and that I oughtn't to have any objection to signing it if she didn't, and my impression is that her signature was there before I signed it, and that is as I recollect the matter. I had objected to signing it, and she said after her name was in front of mine she thought I ought not [to] object to signing it, and then I simply signed it and put on my hat and walked out. I didn't look to see whether her name was there or not, and nothing further was said one way or the other about it."

It is readily apparent from the testimony thus quoted that had the other witness fully corroborated Dr. Porter there would have been no room for doubting even that the statutory requirements. had been fully met.

But some portion of Mrs. Edwards' testimony seems calculated to give the impression that, so far as she had any recollection, it was that Mrs. Laudy did not show her the signature. She said: "When I signed my name the paper was folded, as near as I can recollect, so that I didn't see anything but just so much of the paper where Dr. Porter signed his name and where I signed it immediately

under where the paper terminated — the writing of the paper — and so I saw no contents of the paper further than just the lines where Dr. Porter and I wrote our names. Now I see immediately preceding the name of Dr. Porter the name of 'Kate L. Laudy.'"
"Q. Was that signature visible to you at the time you signed your name to the paper? A. Not that I recollect; I could not tell you. That is a question that I could not answer. I didn't notice it."

She does not say that she did not see the signature, but her testimony, considered in its entirety, amounts to an assertion that she has no present recollection of seeing the signature — a situation in which subscribing witnesses to wills often find themselves.

But the evidence, considered as a whole, satisfies us that notwithstanding her present recollection she did see the signature before signing her name as a witness. At Mrs. Laudy's request she took the will from the secretary and brought it together with the ink and pen to her. From that moment until her signature was subscribed as a witness it is apparent she was in a position to hear and see all that took place. Dr. Porter testified that she was standing near by all the time, and "in such a position that she might have heard it, and naturally would have heard it."

Mrs. Edwards expressed the opinion that she heard all that took place, as will appear from the following question and answer: "Q. Did you hear the conversation at the time this paper was signed between Dr. Porter and Mrs. Laudy? A. Well, I think I did, all that pertained to this matter; it was something like that; Mrs. Laudy asked the doctor if he would sign this paper, which was her last will and testament, and he in a sort of laughing, joking sort of way made the remark, 'Well, he didn't know whether it was anything detrimental;' he didn't want to sign any papers unless he knew what was in them, 'and she said it was her last will and testament, and she just raised her hand from the table, about like that, and that is all that I recollect hearing that pertained to this matter at all."

When, in response to the inquiry whether she had heard Dr. Porter's description of what took place, she said "it was something like that," she portrayed her mental condition and made it plain that her testimony should not be regarded as accurately describing anything that took place. It forces the conviction that this woman had no mental grasp whatever of the events about which she was testifying.

FIRST DEPARTMENT, MAY TERM, 1894.        [Vol. 78.

It seemed to her that "it was something like that" testified to by Dr. Porter. She did not attempt to challenge anything stated by him, and probably could not. But when she undertook to repeat what took place her feeble memory caused her to fall far short of the real facts, and this failure to recall and repeat the occurrences as described by Dr. Porter has been treated as a denial of them.

Again, it is undisputed that at the time Dr. Porter signed the paper it was sufficiently unfolded so that he could see testatrix's signature. "Her signature was there, or there was a signature above where I signed, but I didn't stop to look into the matter very closely one way or the other. I just had a glance at it and I signed my name to it." Then Mrs. Edwards takes up the story of that occasion; she says: "He (Dr. Porter) signed his name. She then turned to me and she says, 'Susan, will you sign now?' and so then I signed my name underneath Dr. Porter's name." Now, there is no evidence that the testatrix or any one else altered the position of the paper between the time when Dr. Porter saw the testatrix's signature as he signed his name and when, immediately after, Mrs. Edwards signed hers. The presumption is that its position remained the same, and that is also the inference from the evidence. If so, the testatrix's signature was as plainly visible to Mrs. Edwards when she signed, if she had looked at it, as it had been to Dr. Porter when he signed it the moment before.

We think the testimony of the subscribing witnesses, considered in connection with the circumstances attending the execution of the will, requires the finding that the testatrix complied with the demands of the statute, that in the event of failure on the part of a testatrix to subscribe the will in the presence of each of the attesting witnesses, it shall be acknowledged to each of the attesting witnesses by her to have been so subscribed.

It follows that the decree appealed from should be reversed and the Surrogate's Court directed to admit the will to probate. (*Matter of Hunt*, 110 N. Y. 278.) Costs of appeal to be paid out of estate.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Decree reversed, Surrogate's Court directed to admit will to probate, costs of appellants to be paid out of the estate.