1. COURTS (§ 202*)—SURROGATES' COURTS—CHAMBERS AND TRIAL BUSINESS.
    Under Code Civ. Proc. § 2504, prescribing the class of business cog-
    nizable by the surrogate presiding at Trial Term in New York county,
    all contested probate proceedings must be disposed of at such term by
    the surrogate assigned to that part of the court, and all other business
    must be disposed of by the surrogate sitting at chambers.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 480–486; Dec.
    Dig. § 202.*]

2. COURTS (§ 202*)—SURROGATES' COURTS—TRIAL TERM.
    Though Code Civ. Proc. § 2504, confines the jurisdiction of the surro-
    gate of New York county assigned to Trial Term, and presiding over that
    term, to contentious probate proceedings, he may nevertheless complete
    his unfinished chambers business.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 480–486; Dec.
    Dig. § 202.*]

3. COURTS (§ 202*)—SURROGATES' COURTS—"CONTESTED PROBATE PROCEED-
    INGS"—CONSOLIDATION OF APPLICATIONS TO PROBATE DIFFERENT SCRIPTS.
    Code Civ. Proc. § 2504, relating to the Surrogate's Court of New York
    County, provides that the term of that court held at chambers shall dis-
    pose of all business, except "contested probate proceedings," which shall
    be disposed of at Trial Term. Held, that a motion to consolidate sep-
    arate contested proceedings for probate of testamentary papers was a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

part of a contested probate proceeding to be made at Trial Term, and cannot be entertained before the surrogate assigned to sit in chambers.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 480–486; Dec. Dig. § 202.*]

4. COURTS (§ 202*)—SURROGATES' COURTS—JURISDICTION.

Where the procedure to be followed in a Surrogate's Court is not regulated by statute, the surrogate proceeds according to the course of the testamentary common law, included in the body of the common law prescribed as the fundamental law of the state by Const. art. 1, § 16.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 480–486; Dec. Dig. § 202.*]

5. WILLS (§ 312*)—SURROGATES' COURTS—PROCEDURE—ADOPTION.

A Surrogate's Court being required in a testamentary proceeding to identify and determine the constituents of a testamentary res propounded, where two scripts are propounded for probate as the last will of the testator, the order of procedure is a matter for the determination of the surrogate, guided by the testamentary common law.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 739; Dec. Dig. § 312.*]

6. COURTS (§ 198*)—SURROGATES' COURTS—SUBORDINATION TO APPELLATE DIVISION—"ORDINARY."

Though the Surrogate's Court of New York is protected by the Constitution and has become a court of record, yet its relations to the Appellate Division of the Supreme Court of the state continue it in the class of "peculiar courts" known to the common-law system; the Appellate Division being the "ordinary" in most matters committed to the jurisdiction of surrogates of the various counties.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 469, 471–475, 478; Dec. Dig. § 198.*

For other definitions, see Words and Phrases, vol. 6, p. 5027.]

7. COURTS (§ 202*)—APPEAL FROM SURROGATE—JURISDICTION—PROCEDURE ON APPEAL.

Appeals from a surrogate may be taken generally to the Appellate Division, which is authorized by Code Civ. Proc. § 2576, to review matters of law and fact, the Appellate Division, on most appeals not within section 2588, having the same power to decide questions of fact that the surrogate has; and for this purpose the Appellate Division may take additional testimony or documentary evidence, or appoint a referee so to do, or it may reconsider the merits of the whole case de novo, in the same manner as the ordinary under the civil and canon law might do, being subject as to errors of law to the superintending power of the Court of Appeals.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 480–486; Dec. Dig. § 202;* Appeal and Error, Cent. Dig. §§ 104, 3378, 3379.]

8. COURTS (§ 202*)—SURROGATES' COURTS—RULES OF EVIDENCE.

The rules of evidence applied in a Surrogate's Court are uniform with those applied in other tribunals of the state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 480–486; Dec. Dig. § 202.*]

9. WILLS (§ 320*)—PROBATE PROCEEDINGS—SEPARATE INSTRUMENTS—CONSOLIDATION.

Where separate scripts are propounded for probate as the last will and testament of an alleged testator, the probate proceedings in a proper case may be consolidated for trial.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 758–760; Dec. Dig. § 320.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In the matter of proving several papers as the last wills and testaments of John C. Martin, deceased. On motion at surrogates chambers for the consolidation of separate proceedings to probate testamentary scripts under contest. Denied.

Allen & Sabine, of New York City, for the motion.

James Cowden Meyers, Frederick W. Garvin, Parsons, Closson & McIlvaine, and Graham & L'Amoreaux, all of New York City (Charles H. Beckett, of New York City, of counsel), opposed.

FOWLER, S. The proponent of a later testamentary script under contest moves at chambers of this court for the consolidation of a separate proceeding to probate an earlier testamentary script, also under contest. The present motion is contested, and contestants urge the preliminary objection that the motion is addressed to the discretion of the surrogate sitting for the trial of contested probates, and should be made when the trial of the probate proceeding comes on for the hearing and not in advance, or before the surrogate sitting for the dispatch of chambers business.

[1] Section 2504, Code of Civil Procedure, prescribes the class of business which is cognizable by the surrogate presiding at Trial Term of this court. All other business is to be disposed of by the surrogate sitting at chambers. But it is unnecessary to go beyond the motion now before the court. All contested probate proceedings must be disposed of at the Trial Term by the surrogate assigned to that part. Of course section 2504, C. C. P., in the instance of the Surrogates' Court for this county, is modified by section 2547, C. C. P., allowing the surrogates of this county to send probate issues for a trial by a common jury. It is apparent to me that the statute vests the jurisdiction over contested probate proceedings, or the former contentious probate jurisdiction, exclusively in the surrogate of this county who is assigned to preside at the Trial Term. Section 2504, C. C. P.

[2] Too strict an interpretation of section 2504, C. C. P., might, however, hamper the business of this court, and result in an alternate surrogateship in this county, rather than in a dual or concurrent surrogateship, intended to double the efficiency. It is, however, plain enough that the language of section 2504, C. C. P. confines the jurisdiction of the surrogate assigned to the Trial Term and presiding at the Trial Term to contentious probate proceedings. Of course he may complete his unfinished chambers business left over, but that is all. The surrogate sitting at chambers must dispatch all the other business of the court.

[3, 4] Does the present motion fall under the statutory designation of business other than "contested probate proceedings," or is it an integral part of a contested probate proceeding? I am inclined to think that the motion is to be regarded as a part of a contested probate proceeding, and must therefore be reserved for a hearing at the Trial (or contentious probate) Term of this court. The probate jurisdiction of the surrogate is given by the statute (section 2472, C. C. P.), but.

to some extent only is the proceeding for probate regulated by statute. When the statute is silent, the surrogate proceeds according to the course of the testamentary common law, which is included in that great body of common law, prescribed as the ulterior or fundamental law of the state by the Constitution of this state. Article 1, § 16; Martin v. Dry Dock, etc., R. R., 92 N. Y. 70, 74; Matter of Work, 76 Misc. Rep. 403, 405, 406, 137 N. Y. Supp. 97; Matter of Connell, 75 Misc. Rep. 574, 578, 136 N. Y. Supp. 166; Matter of Carter, 74 Misc. Rep. 1, 7, 133 N. Y. Supp. 722; Matter of Meyer, 72 Misc. Rep. 566, 569, 131 N. Y. Supp. 27; Matter of Swartz, 79 Misc. Rep. 388, 139 N. Y. Supp. 1107.

[5] One of the obligations of a Surrogate's Court in this state is to identify and determine the constituents of the testamentary res propounded. Matter of Foley, 76 Misc. Rep. 168, 175, 136 N. Y. Supp. 933. In the proceedings now before me, there is an allegation of revocation by a later testament, and therefore a choice between two propounded scripts. The surrogate on the trial is to determine judicially which script, the earlier or the later, is entitled by testamentary law to probate. The order of procedure is left by the statute to the surrogate, and yet not to the arbitrament of the surrogate alone, but to the surrogate, guided and controlled by the testamentary common law, organically prescribed by the Constitution. It may be useful to survey for a moment the organization of the Surrogate's Court, now continued by the Constitution of this state. Article 1, § 15. Perhaps the relations which this court bears to the judicial system of the state may throw some light on the incidental powers of the surrogate, when the statute relating to procedure is silent. In any event a brief survey of the constitution of the Surrogate's Court is not irrelevant to some phases of the procedure of the court on the probate side. In no other way is the constitution of the Surrogate's Court better explained than by tracing the course of appeals from the surrogate.

[6] In legal theory the surrogate continues, in most part (although his tenure of office is not now due to the Appellate Division or any other superior court), to be a subordinate official of courts vested with the higher jurisdiction. While the continuance of the Surrogate's Court is now protected by the Constitution of the state, and it has become a court of record, yet its relations to the Appellate Division of the Supreme Court of the state continue it in the class of "peculiar courts" known to the common-law system. All the existing courts of this state have distinct reference to the pre-existing establishments of the common law. Indeed, the same characteristics pervade the judicial establishments of the 13 original states.

At the present time the Appellate Division of the Supreme Court of this state happens to be the "ordinary" in most matters committed to the jurisdiction of the surrogates of the various counties. The surrogate's relations to the Appellate Division in this particular are now much those which long existed between the surrogate and the "ordinary" of the old ecclesiastical courts. It is astonishing, although

not an accident, how closely the present system is new-modeled on the old. The "ordinary," in testamentary common law, is a term of the civil law, "ordinarius," and indicates the higher judicial office in probate or other ecclesiastical jurisdictions, in opposition to that of a subordinate official, extraordinarily appointed (surrogatus), to exercise such jurisdictions. The surrogate is not the "ordinary" in matters falling under the probate jurisdiction. It is sufficiently exact for present purposes, in tracing the present jurisdiction of surrogates, to say that formerly all "ordinaries" had the power of appointing deputies, commissaries or surrogates of some kind. The old canon-law office of surrogate in England was, after the Reformation, recognized both by the revised canons and by acts of Parliament.

In New York after the year 1664, when this province came under English control, the crown (or the proprietary for a short time prior to the Duke of York's accession as James II) had an exclusive ecclesiastical jurisdiction and could in law delegate such jurisdiction to the governor of a crown province, such as New York was until the successful revolution ending in independence. The governor of the province thus became the ordinary in New York while it was under the crown. Chalmer's Colonial Opinions by Attorney General Northey in 1705, p. 41; Chitty, Prerogatives of the Crown, 36. After 1702 the royal governor of New York appointed a surrogate to exercise the probate jurisdiction, and after 1746 all his local delegates were called surrogates in this territory. The royal governor's testamentary and intestate jurisdiction was exercised finally in the Prerogative Court, of which he was the head. Isham v. Gibbons, 1 Bradf. Sur. 69, 78; Kohler v. Knapp, 1 Bradf. Sur. 241; Re Brick's Estate, 15 Abb. Prac. 12; Matter of Thompson, 184 N. Y. 36, 40, 76 N. E. 870.

After our independence of the crown, the "act to organize the state government," passed March 16, 1778, invested the jurisdiction in intestate and testamentary matters, formerly exercised by the royal governor, in a judge of the Court of Probates, except that the surrogates in the several counties were thenceforth to be appointed by the council of appointment and commissioned under the great seal of the state. 2 J. & V. 23. The Revised Laws of 1813 ultimately defined the jurisdiction of surrogates under the first Constitution. 1 R. L. 444. Under the first Constitution of the state the judge of the Court of Probates acted as ordinary and the surrogates as the extraordinarii in all matters formerly cognizable in the Prerogative Court of the royal governor of New York. The unwritten practice in all such courts continued to be closely patterned on that of the ecclesiastical courts of England. They continued the exemplars of the jurisdiction and practice in all the Courts of Probate of New York.

In every court, proceeding according to the canon or civil law, there was always a right to appeal or resort to some higher tribunal for relief or protection. In the ecclesiastical courts of England the appeal was, in general, taken first to the Diocesan, thence to the Metropolitan, and finally to the King in Council. Toller on Executors, 73. In

New York prior to our independence appeals lay from the surrogate to the royal governor, or his Prerogative Court, and thence to the King in Council. On all such appeals the ordinary could review the facts as well as the law, and sit as the trial court to take new evidence and then award judgment de novo on the merits. Re Brick's Estate, 15 Abb. Prac. 12, and authorities there cited; Vanderheyden v. Reid, 1 Hopk. Ch. 408, 412, and authorities there cited; Devin v. Patchin, 26 N. Y. 441, 445.

After the establishment of the state government appeals at first lay from the surrogate to the Court of Probates. Under the second Constitution of the state, in force in 1821, the Court of Probates was abolished. Laws of 1823, p. 62; 1 R. L. 444. The office of surrogate was, however, continued and the appointment to it vested in the Governor, with the consent of the Senate. Prior to the Revised Statutes, appeals lay from the surrogate to the chancellor, and from the chancellor to the Court of Errors. At that time the course taken on such appeals was according to that in the civil and canon law courts. Vanderheyden v. Reid, 1 Hopk. Ch. 408, 412; Van Wyck v. Alley, 1 Hopk. Ch. 552, 553; Scribner v. Williams, 1 Paige, 550. The Revised Statutes of 1830 extensively remodeled the jurisdiction, powers, and duties of surrogates under the second Constitution of the state, and regulated appeals from the surrogates. 2 R. S. 66, 95, 152, 608, 609. In the year 1837 the Revised Statutes themselves were extensively remodeled. Chapter 460, Laws of 1837. The changes did not materially alter the powers of the appellate courts over surrogates' decrees and decisions. Devin v. Patchin, 26 N. Y. 441, 447; chapter 185, Laws of 1848; Burger v. Burger, 111 N. Y. 523, 526. Subsequent to the Constitution of 1846 and the Judiciary Act (chapter 280, Laws of 1847), the opinion was that the whole case continued open to review on appeals from surrogates. Robinson v. Raynor, 28 N. Y. 494, 497; Schenck v. Dart, 22 N. Y. 420; Gardiner v. Gardiner, 34 N. Y. 155, 164; Clapp v. Fullerton, 34 N. Y. 190, 195, 90 Am. Dec. 681; Burger v. Burger, 111 N. Y. 523, 528, 19 N. E. 99, 21 N. E. 50.

[7] An attentive examination will disclose that the present Code of Civil Procedure was framed with precise reference to the ancient practice in New York, and the Appellate Division of the Supreme Court on appeals from the surrogate continues to act as ordinary in testamentary matters. Appeals from the surrogate may be taken generally to the Appellate Division, and it then reviews matters of law and fact (section 2576, C. C. P.), and on most appeals (not within section 2588, C. C. P.) it has the same power to decide questions of fact which the surrogate has. As an original trial court in such cases the Appellate Division may take additional testimony or receive documentary evidence or appoint a referee so to do (section 2586, C. C. P.), or it may reconsider on the merits the whole case de novo, just as the ordinary under the civil and canon law might do. Matter of Laudy, 78 Hun, 479, 29 N. Y. Supp. 136; Matter of Rogers, 10 App. Div. 593, 42 N. Y. Supp. 133; Matter of Warner, 53 App. Div. 565, 65 N. Y. Supp. 1022; Matter of Pfarr, 79 App. Div. 634, 79 N. Y. Supp. 639; Id., 88 App. Div. 616, 84 N. Y. Supp. 1141; Matter of Burr,

116 App. Div. 518, 101 N. Y. Supp. 776; Matter of Beck, 6 App. Div. 211, 39 N. Y. Supp. 810, affirmed 154 N. Y. 750, 49 N. E. 1093; Matter of Drake, 45 App. Div. 206, 60 N. Y. Supp. 1020; Matter of Rice, 81 App. Div. 223, 81 N. Y. Supp. 68, affirmed 176 N. Y. 570, 68 N. E. 1123; Matter of Snedeker, 95 App. Div. 149, 88 N. Y. Supp. 847; Matter of Tyndall, 117 App. Div. 294, 102 N. Y. Supp. 211; Matter of Van Alstyne, 142 App. Div. 209, 126 N. Y. Supp. 1078; Matter of Totten, 179 N. Y. 112, 115, 71 N. E. 748, 70 L. R. A. 711, 1 Ann. Cas. 900. As in former times, the Appellate Division as such ordinary is subject, as to errors of law, to the superintending power of a higher tribunal, which now happens to be the Court of Appeals. Kingsland v. Murray, 133 N. Y. 170, 30 N. E. 845; Matter of Totten, 179 N. Y. 112, 71 N. E. 748, 70 L. R. A. 711; 1 Ann. Cas. 900; Matter of Thorne, 162 N. Y. 238, 56 N. E. 625.

From this extended survey of the surrogate's proper jurisdiction over probate proceedings it must be apparent that this court was intended to continue on common-law foundations, except where the statute otherwise provides. Now, there is nothing in the statute or in the late adjudged cases about the consolidation of separate proceedings to probate various testamentary scripts of one testator. Therefore we must look to the testamentary common law for the true procedure. The statute of wills regulates only the exercise of the testamentary power. It leaves all or nearly all the balance of the rules governing the testamentary succession to such common law. In Matter of Work, 76 Misc. Rep. 403, 408, 137 N. Y. Supp. 97, I alluded to the inherent power of a surrogate to compel the production of any other testamentary scripts than those produced in any proceeding for probate. I firmly believe such power is one of the incidental powers which flows from the general grant of a probate jurisdiction. Sipperly v. Baucus, 24 N. Y. 46; Bevan v. Cooper, 72 N. Y. 317, 328; Martin v. Dry Dock, etc., R. R., 92 N. Y. 70, 74; Matter of Camp, 126 N. Y. 377, 390, 27 N. E. 799; Matter of Randall, 152 N. Y. 508, 516, 46 N. E. 945; Matter of Runk, 200 N. Y. 447, 456, 94 N. E. 363; Peebles v. Case, 2 Bradf. Sur. 226, 243. It would, I venture to think, be an absurd condition of the law if the rule were otherwise. To be compelled to decree a probate of an earlier will produced, when it is alleged and admitted that there exists a later will not produced, would be productive of public mischief. Coote's Practice in the Ecclesiastical Courts, 472, well indicates the former common-law practice in such cases, and it is well understood that a similar practice was in force in this jurisdiction prior to the Revised Statutes. Goodrich v. Pendleton, 4 Johns. Ch. 549, 553; Vanderheyden v. Reid, 1 Hopk. Ch. 408, 411, reversed on another point 5 Cow. 719; Bogardus v. Clarke, 1 Edw. Ch. 266, 267; Id., 4 Paige, 623; Matter of Work, 76 Misc. Rep. 403, 405, 406, 137 N. Y. Supp. 97; Matter of Wagner, 119 N. Y. 28, 36, 23 N. E. 200.

[8] The procedure in contested probate proceedings, when not otherwise established by statute, has reference to the prior testamentary common law, and this is so both by the common law itself and by statute. Subdivision 11, § 2481, C. C. P. The rules of evidence ap-

plied in this court are, however, an exception to this statement; as they are now uniform with the rules applied in other tribunals of the state. Peebles v. Case, 2 Bradf. Sur. 226; subdivision 11, § 2481, C. C. P. But the jury rules of evidence are not always of great consequence in this court, where errors not vital to the result are overlooked. Section 2545, C. C. P.; Matter of Ross, 87 N. Y. 514. When the former ecclesiastical courts, on which the procedure and jurisdiction of our probate courts were originally modeled, proceeded in purely ecclesiastical causes, the rules of evidence were their own and founded on the civil law. 3 Burns, Ecc. Law, 304. But in other causes in the ecclesiastical courts the common-law courts compelled the ecclesiastical courts to admit such evidence as the common law allowed. Evans v. Evans, 3 Notes Ecc. Cas. at page 428. The tendency in the ecclesiastical courts was toward the common-law rules of evidence after the Reformation. Groom v. Thomas, 2 Hagg. 433.

In the Surrogates' Courts of New York state no other rules of evidence than those prescribed by the common law have, I think, ever prevailed, although there is some authority for presuming that the rules of evidence recognized in the Court of Chancery were preferred to the rules of the common-law courts. Other analogies offered by the testamentary common law are, however, still to be regarded in probate proceedings whenever both usage and statute are silent. Martin v. Dry Dock, etc., R. R., 92 N. Y. 70, 74; subdivision 11, § 2481, C. C. P. The constitutional adoption of the former common law of New York as the ultimate rule in the present state means either this or nothing, and so Chancellor Kent held in respect of the procedure in our courts of equity. Manning v. Manning, 1 Johns. Ch. 527, 529. A late statute now reinforces this principle in this court. Subdivision 11, § 2481, C. C. P.

In the ecclesiastical courts recognized by the common law, and according to Coke himself part of the common law, when a paper was propounded as a will, and there was an allegation of a separate paper revoking the will, it was in the power of a judge of a court of probate to admit some of the papers and refuse probate to others. Griffin v. Ferard, 1 Curteis, 97; Fowlis v. Davidson, 4 Notes Cases, Ecclesiastical Courts, 149; Palmer v. Brown, 7 Notes Cases, Ecclesiastical Courts, 555. If we take into account the rigidity of the civil-law pleadings in the former ecclesiastical courts, these decisions cited show a large latitude of authority in the probate judges of England. In Hillane v. Walker, 1 Hagg. 71, it was held that one who was not an executrix of a codicil according to the tenor had no standing to contest an earlier will. This shows that the codicil was to be first proved. The burden of proof was then on the persons propounding the codicil first to give evidence which entitled them to contest an earlier will. Gibbens v. Gibbens, 2 Addams, 455. The former practice on this point is now perpetuated in this jurisdiction by rule 4 of this court, which requires the controverted right of one desiring to dispute probate to be first determined by the surrogate. In re Hamilton's Will (Sur.) 12 N. Y. Supp. 708, affirmed 76 Hun, 200, 27 N. Y. Supp. 813.

But even in the absence of this very explicit rule of court, bearing on this motion, the old practice would be of some account at the present day in the absence of modern authority or statute. The precedents in the ecclesiastical courts are always entitled in this court to consideration (Betts v. Jackson, 6 Wend. 173, 183; Bevan v. Cooper, 72 N. Y. 317, 329; Tyler v. Gardiner, 35 N. Y. 559, 583), in the absence of modern authority or controlling statute. To my mind such precedents are sufficient to show that the surrogate as a probate judge is by the common law invested with a large discretion over the order of proof in a contentious probate proceeding, and that the order of proof on such proceeding is a part of the trial before the surrogate and addressed largely to such judicial discretion. Of course, he may err in this regard, and then the way to redress has been pointed out at some length in this opinion.

[9] That there may at the present time be proper cases for a consolidation of separate proceedings to probate various testamentary papers of different dates made by the same testator, both the old and the modern precedents disclose. Van Wert v. Benedict, 1 Bradf. Sur. 114. Formerly the ecclesiastical judge could order all testamentary papers to be produced in court in a proceeding to probate any one of them. Coote, Ecc. Practice, 472; Killican v. Lord Parker, 1 Lee, 662; Matter of Work, 76 Misc. Rep. 403, 408, 137 N. Y. Supp. 97. This was tantamount to a consolidation at the present day. But the circumstances of a particular case must always indicate the proper procedure for that case, and the proper procedure rests largely in the discretion of the trial judge.

But, whether I am correct or not concerning the probate practice in former times and at present, I am quite satisfied that the motion now before me is in the Surrogate's Court of this county addressed to the discretion of the surrogate presiding at the trial, and that this motion for an order regulating the procedure of the trial or the order of proof on the trial of a contested probate is premature, and not to be classed as chambers business. I must therefore deny the motion.

Motion denied.